SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS: CRIMINAL TERM: PART 17
-------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,

-against- INDICTMENT NO. 3066-04

GLEN CUMMINS,

TRIAL

Defendant.
-------------------------------------------X
320 Jay Street
Brooklyn, New York

January 23RD, 2006

B E F O R E: HONORABLE ABRAHAM GERGES
Justice of the Supreme Court

A P P E A R A N C E S:

OFFICE OF CHARLES HYNES, ESQ.
DISTRICT ATTORNEY - KINGS COUNTY
Attorney for the People
350 Jay Street
Brooklyn, New York 11201
BY: SUSAN MILLUS, ESQ.
Assistant District Attorney
ALSO: JOHN MARONE

Assistant District Attorney

GEORGE SHEINBERG, ESQ.
ATTORNEY FOR DEFENDANT

Walter Egielski
Senior Court Reporter

VOIRE DIRE

THE COURT: What things were turned over?

People of state of New York versus Glenn Cummins 3066 year 2,004.

Previously handed over to Mr. Scheinberg notes from Police Officer Dobrowski, six page notes from Det. Romano, six pages, Det. Platt, 98 page autopsy record, six pages Jury transcript, 48 page Hearing minutes 42 pages visitation of phone records 59 pages, microscopic notes, case notes, comparison notes eleven pages ,prisoner movement slip, three pages, complaint follow up, 86 pages homicide investigative, report five pag additional police officers notebook, five pages, the pedigree information one page, line-up paper work, six pages, death certificate three pages death report, three pages, unusual, one page exam room screening sheet, Sprint Report, nine pages, vouchers, five page miscellaneous paper work, 20 page photo crime scene, 34 photos, two audio tapes, one CD, search warrant as well as handing over today Det. Forte's paper work from crime scene, unit 24 pagesP

THE COURT: Acknowledge receipt.

MR. SCHEINBERG. I do. I received those on prior to the, during the course of this case and on January 19 '06.

MR. SCHEINBERG:One thing on the Rosario that I don't, have I did not receive notice of phone records fifty nine pages of phone records. I never received that.

MS. MILLUS: He is not entitled on that, should not have been included visitation of phone records 59 pages, we did not hand that over to Mr. Scheinberg. I misspoke when I read. That?

THE COURT: Why is it not turned over?

MS. MILLUS: We just investigated as far as who was calling the defendant, who was visiting the defendant. We don't plan on calling it in.

THE COURT: None of the witnesses will be testifying as to any of; that correct?

MS. MILLUS: Correct Your Honor. Defendant in courtroom.

THE COURT: Those pages with reference to telephone numbers that won't

VOIRE DIRE

be played?

MS. MILLUS: No, Your Honor

THE COURT: I want you to be cognizant of that that the Rosario not only Rosario but you have Brady material has to be turned over as well.

MS. MILLUS: We will take another look at it but our view now is it's not Rosario nor Brady.

THE COURT: Okay.

Jury entering

Good morning, ladies and gentlemen of the jury. My name is Judge Abraham Gerges will be presiding at this trial.

Before going into a more formal question and answer which is called voir dire which is a French expression meaning to speak the truth give you over I am sure that many of you have never been jurors before and probably many of you have never been in a courthouse before. I am going to give you an overall picture so you learn what to expect. I have learned when people are explained the way things occur you have more patience, understanding rather than me

telling you you have to do X, Y, Z.This case is not going to be a long case, take probably a week. I should tell the charges involved in this case are murder in the second degree, burglary, intimidatinging a witness, criminal possession of a weapon. I will go into greater detail in a little case.

This is not a capital punishment case.I want you to understand that as well. As far as I think maybe. I not only sit in the criminal term that's what you're sitting in now the criminal term of the Supreme Court but I also do civil cases. I am also the judge that handles condemnation cases. That's when the city or state takes over schools, parks or things like that.

What happens is I have a calendar beside the case on trial. I tell that you so you will understand what when I tell you the hours that you will be working that I do other matters beside the trial involved here. Usually let me start with lunch time time. We always break for lunch between one and 2:15. That usually happens every

day for those people who like to eat on time in morning, we usually start or you usually start about 10:15 that's based upon what I have that morning to to do I try to block out the time so there is no need for the jurors to be sitting around waiting for me if I have other matters, Night before I always tell you what time to be here in the morning. That's approximately the time you will be here. By that time I have completed my calendar. In the afternoon we usually end by 5:00. That is not in stone. For example, a witness on the stand several hours. If in my opinion the attorneys will be finished in the next ten, 15 minutes later, we work little later. Conversely if there is a new witness is going on, we break at quarter to five. You will only hear the same testimony following morning. I have a dual function. I am kind of the umpire involved in the case? Secondly, I am the judge of the law? You're the judges of the facts? At times there are legal issues that come up? When legal issues come up it's the attorneys and myself that

VOIRE DIRE

are involved? You're excluded from it? That doesn't happen often but at times when it does that kinds of gives you the overall picture of the hours and times? I have a full calendar on Friday so for those people who do become jurors will not be working on Friday. I take care of the condemnations on Friday. For those jurors who are, those people who are jurors will not be working on Friday. I tell that in advance. I try to share with you whenever I can what is going on. Only time I am not permitted to share with you is when we have legal issues. Approximately four years ago that the state legislature changed the law with reference to who has to serve as jurors. Prior to that period of time certain groups of people were excluded.For example, small business people, single parents, students doctors, lawyers, police officers Corrections Officers, that whole group of people did not have to serve previously. Now everyone has to serve. I did my jury duty last year. I think it's a good law because at the present time as we sit here

right now there are a number of groups that don't like our system of government and probably one of the important functions of our government is trial by jury. I think it is important that people give the one thing that People have a limited amount of; doing; that is your time. Probably being a juror is the second most important duty for any citizen in this country, the first being in war, sometime being in the armed forces. Once you're set up here I can't let you go. I don't want you to feel I am arbitrarily saying no to you. A judge is not supposed to be a popular person. I have to adhere and administer to the law as I have been told to do. I tell that you in advance because I am sure there will be people who will say I can't serve, judge. If I tell you I can't let you go I want you to understand why in advance, not feel that I am just not really listening to you because I will listen to each, every person. I want you to know even if I let somebody go that does not mean you go home. That means you go back downstairs. They

will send you to another part. Please don't say this. Some of the other judges but some of the other judges do not have a sense of humor like I have. I wish I was back with Judge Gerges because it was relaxing, very serious business that goes on in the courtroom. There is no reason why people should be tense. It's a new experience for a lot of you. I will try to make it that. I will be asking you questions and attorneys in turn will be asking you questions. The questions that I ask you as well as the attorneys are intended for one purpose, one purpose only that is to make sure you're fair, impartial jurors. Sometimes we may ask you questions that you don't want to answer publicly .that's perfectly fine. All you have to do is say, judge I would like to approach the bench. You can discuss your answers privately. You don't have to give me a reason for it. However I want all of you to understand that your sworn to tell the truth.

With that I would ask the clerk to

swear the panel. Would you all rise.

THE COURT: Or affirm.

COURT CLERK: (prospective panel sworn)

THE COURT: I have already introduced myself. My name is Abraham Gerges .I will be presiding at this trial. The People are represented by District Attorney Joe Hynes. He has delegated two Attorneys to present the evidence in the case.

Assistant District Attorney Susan Millus, and Assistant District Attorney John Marone. The defendant is represented by George Scheinberg and the case on trial is the People versus Glenn Cummins.

Now the following witnesses by the way the incident took place on or about April 2nd and April four or three at about eleven fifteen am on April 2nd and it took place in location apartment one about 93 Woodruff in Brooklyn. Which I believe is I think it's in Flatbush. Is there anyone by chance who happens to know anything about this case? Anything. Anybody heard it discussed,

read about it in any newspapers? Does anybody here know me, the attorneys, the defendant?

Now the following names you might hear and/or witnesses might be called. By my mentioning their name imposes no obligation on either side in calling those witnesses. I mention it because it be improper for you to sit on the case if you knew any of the parties.

Some of the names that you might hear during the trial and or testify is Brenda Jones Jones, Det. Matiga, Barbara Jones, Georgia Jones, Horace Jones, Derrick Hewlitt, Curlan Charles, Det. Charles Platte, Det. Mahoney Det. Gambito, Det. MdCarthy, Det. Forte, Det. Maureen Dunne, Sergeant John Mirra, Police Officer Michael Wright, Police Officer John Martinez, Police Officer Dobrowski, EMS EMS Baruso, D.A. John 1John Giagatti ADA Grace Hogan, Florina Hancock, Pat Roberts,Kim Washington, James Reid, Jamatt Chambers Reid..

THE COURT: Are these names familiar to anyone? Now a name is quite different from a face. If per chance you're selected as a juror someone does get on the witness stand that you recognize please bring to the court's

VOIRE DIRE

attention promptly. Do not discuss it with other jurors.

Now the first step in a criminal case is to select a jury, a jury free from preconceived notions and prejudices and that will be fair to both the People and defendant.

If you're selected as juror it will be your responsibility to determine what happened in this particular case. The law provides that you are the sole judges as far as the facts are concerned and the Court is the sole judge as far as the law is concerned and the law is given to you by the Court not given by any of the attorneys; solely by the Court. Can each of you promise that you will accept the law as it is given to you by me whether You agree with that law or not? And that you will apply the law to the facts as you determine them to be? Does anyone have a problem with that concept?

Is there anyone here that because of religious purposes cannot adhere to the law as given by the Court?

In order for you to determine what the facts are you must evaluate the evidence.

evaluate is the first most important word to a juror. Evaluate means you must go behind the witness's oath and determine the credibility of the testimony that is, whether it is probable or improbable, whether a witness is telling the truth, is lying and or mistaken.

You must determine the reliability of the testimony, that is as I indicated whether it's probable or improbable in light of other evidence you accept as proven. You have the right to accept or reject the testimony of any witness in whole or in part.

After you have heard all of the evidence that I have instructed you on the law then you will retire to deliberate and deliberate is the second most important word to a juror. It's important because a jury is composed of 12 different people and in deliberation there maybe pressure to convince you of another position. It is the duty of each juror to give their own individual views also to listen to the other jurors to weigh their argument but then vote according to that juror's own conscience. The fact that this action is brought in the name of the People of

VOIRE DIRE

the state of New York or that the evidence is brought in the name of a public official the People are served by whatever verdict is justified by the law and by the evidence.

I shall be directing my questions first to you as a panel for those purposes. You folks are all part of the panel. Then people will be called placed in what's called a box here then you will be asked question by me and the attorneys in turn.

I expect the case will take about a week to try. Is there anyone who because of extreme hardship could not sit on a case for that period; please raise your hand want to step up here please.

THE COURT: Send him to a civil part have a seat. I should have asked this question does everybody here speak, understand English? That's an interesting question. If you don't speak, understand English how do you answer?

Does anybody here have a hearing handicap or any other type offhand that might prevent him or her from sitting on this case?

THE COURT: Come on up.

Off the record

THE COURT: Send him to a civil part Court will now state certain principles of law which you must accept whether you agree with those principles or not. For any reason you cannot accept these principles of law you must so indicate. We will explore those together. Defendant was brought into Court by way of indictment. Indictment is given to name a piece of paper. It is not proof. It is only the means which the defendant is brought to Court. It outlines the complaint against the defendant. Indictment is only accusation of crime. You cannot infer that defendant is guilty because he has been arrested, because he has been indicted by Grand Jury. Do all of you accept that premise? Do you understand that defendant comes into Court to answer the indictment. When he pleads not guilty law provides that the defendant is presumed to be innocent until proven guilty beyond a reasonable doubt. Can each of you accept the {fact} at this point defendant is innocent of all crimes against him? You understand because of these concepts, because you have heard no

evidence up to this point, if I was to ask you to vote right now you would have to vote the defendant not guilty? Do any of you hold any other views? Do any of you feel because the defendant has been arrested because he has been indicted by Grand Jury he must be guilty of something? Some people say where there is smoke there is fire. Somebody arrested, indicted they must be guilty of something. That is not what the law is in this country.

PROSPECTIVE JUROR: The case happened two years ago, defendant probably was in prison how come he is innocent?

THE COURT: Well, ma'am you have to accept the law that I give to you. That's the point. You can't speculate or anything. You have to accept the law I give you. The law is that the defendant is innocent. You used to have to prove your innocence in other countries. You have to do that as well, they throw you in prison say you have to prove your innocence. In America you're innocent until proven guilty. The burden is on the People to prove you guilty. It's quite different. That's why it's upon important that people

VOIRE DIRE

understand it's a very important very function one of the pillars of our democracy.

Now the law has placed to prove the defendant guilty beyond a reasonable doubt on the shoulders of the District Attorney. That burden of proof never shifts. Do any of you feel this is too heavy a burden on the People? Now bearing in mind that the defendant need not prove anything, the law says if prosecution meets its burden and proves the defendant guilty beyond a reasonable doubt it is your responsibility as juror to find the defendant guilty. Now can you do that? Anybody have a problem with that? Under our system of law the defendant is not obligated to take the witness stand or call any witnesses. The attorney can sit here. He is not saying one word during whole trial. I doubt if that will happen but it can. You cannot hold it against him at all the law porvidesl you may not draw any inference unfavorable from the fact he does not take the stand. Would you be able if the defendant does not take the stand hold the People to their proof of guilt beyond a reasonable doubt based upon the evidence

produced by them and the law as given to you by me? Anybody have a problem with that concept?

I will define reasonable doubt at the end of the trial. In substance reasonable doubt is not a mere possibility or a whim or doubt born from some guess orphan or fancy but a doubt which you have after you consider all the evidence, when after such consideration the presence of certain facts or the absence of certain facts leaves your mind in such state of uncertainty you're not fully convinced of the defendant's guilt whether In that state of mind of doubt which seems reasonable to you that sort of doubt is a reasonable doubt. It does not mean beyond all doubt. Can you find defendant not guilty if you have a reasonable doubt?

On the other hand if you have no reasonable doubt could you find defendant guilty? You may not consider punishment, sympathy or prejudice in your verdict. Any of you feel you could not eliminate punishment sympathy or prejudice from your deliberations? Let me go further on the meaning of that. I hope I don't have a group of people who are not

sympathetic. That would be horrendous. What it means any sympathy that you might have for anyone involved in this case you have to set that aside and objectively listen to the evidence that comes in and base your decision on the evidence and not take into consideration any sympathy that you might have for any any of the parties are involved here. Does anybody have a problem with that concept? As I told you from from the outset you must evaluate the testimony of witnesses. You must determine whether witness who testifies is telling the truth, whether witness is reliable. for example, a number the People's witnesses in this case will be police officers. They will take the same oath as any other witness. The fact witness is a police officer or wearing a police officers uniform does not make him, her any more or less credible by the fact that the witness happens to be a police officer. Any of you who has any feeling about the police which would lead you to give a police officer's testimony any greater or lesser weight than anybody else's testimony? You want to tell step up here please. Off the record

THE COURT: Send her up to a civil case.

Is there any of you, any reason why any of you would not want to sit on a case involving this type of crime? Are you willing to assume responsibility sitting as jurors on a criminal case? For you folks here we are going to fill up the seats here. When your name is called please say present or here so that the Court reporter can write down you're here. This way you get paid. Other wise, you don't get paid. Take all your belongings. Court Officer will direct you how to come up here. Clerk fill the box?

COURT CLERK: Seat one, Rieukah Kaufman, seat two, Kahli Brannigan, seat three, Lena Houston, seat four, Innocenica Colon, seat five, Maya Konsky, seat six, Henry Bovall, seat seven, Debra Ramroop, seat eight, Hadley Perivera, seat nine, Major Tinsley, seat ten, Alex Tisch, seat eleven, Madeleine Stein, seat twelve, Michael Sklar, seat thirteen, Marina Yadgarova, seat fourteen, Ramlochhand Singh, seat fifteen, Kate Zuckerman, seat sixteen,

Annie Sistrunk, seat seventeen, Edgard Jean Jacques, seat eighteen, Wojiech Jalowski. Number {WUP} are I you can a had, last can a you if in a in {REUF} car cough man, seat one, Rieukah Kaufman, seat two, Kahli Brannigan, seat three, Lena Houston, seat four, Innocenica Colon, seat five, Maya Konsky, seat six, Henry Bovall, seat seven, Debra Ramroop, seat eight, Hadley Perivera, seat nine, Major Tinsley, seat ten, Alex Tisch, seat eleven, Madeleine Stein, seat twelve, Michael Sklar, seat thirteen, Marina Yadgarova, seat fourteen, Ramlochhand Singh, seat fifteen, Kate Zuckerman, seat sixteen, Annie Sistrunk, seat seventeen, Edgard Jean Jacques, seat eighteen, Wojiech Jalowski number two can a had will I, about are a in in I go a in, seat one, Rieukah Kaufman, seat two, Kahli Brannigan, seat three, Lena Houston, seat four, Innocenica Colon, seat five, Maya Konsky, seat six, Henry Bovall, seat seven, Debra Ramroop, seat eight, Hadley Perivera, seat nine, Major Tinsley, seat ten, Alex Tisch, seat eleven, Madeleine Stein, seat twelve, Michael Sklar, seat thirteen, Marina Yadgarova, seat fourteen, Ramlochhand Singh, seat fifteen, Kate

VOIRE DIRE

Zuckerman, seat sixteen, Annie Sistrunk, seat seventeen, Edgard Jean Jacques, seat eighteen, Wojiech Jalowski.

THE COURT: This is called the first round for obvious reasons, be the first time I will be asking you questions. What happens is all the people here will be asked the same questions. I would appreciate number one listen to the question, think about the answer goes faster, people in the audience same thing think about the question when you're asked second round goes faster than the first round.

You, anyone in your family close friend ever been victim of a crime please raise your hand. Miss Kaufman how long ago?

PROSPECTIVE JUROR: I was involved in the trade center. I was involved in a mugging.

THE COURT: In the mugging were you satisfied with the police work?

PROSPECTIVE JUROR: I didn't report it.

THE COURT: Was there a reason why you didn't report.

PROSPECTIVE JUROR: I was afraid.

THE COURT: Obviously this defendant

had nothing to do with this case will the fact yourself was victim of a crime interfere with you being fair in this case?

PROSPECTIVE JUROR: I don't believe. So.

THE COURT: When you say you don't believe so.

PROSPECTIVE JUROR: No.

THE COURT: Just imagine, have you been on vacation lately on a plane?

PROSPECTIVE JUROR: No.

THE COURT: Just imagine you come home from a vacation, you're now traveling around Kennedy airport. The captain gets on a loud speaker. He says ladies and gentlemen of the jury I kind of think we are going to land safely. I am not sure. But I think we are going to land safely. You wouldn't be too happy. What we want to do is make sure this is a new experience for you. You don't know anything about this case, probably never been jurors before. Bottom line is are you fair people in your every day life? You're going to bring your every day experience, every day life eighteen teen of you probably come from

VOIRE DIRE

different backgrounds but there is one common denominator. That common denominator is what we are waiting for as jurors. There is no right or wrong answer. Can you be fair, have you predetermined in your mind without listening to anybody? Do you think you can be fair juror?

PROSPECTIVE JUROR: Yes.

THE COURT: Miss Stein.

PROSPECTIVE JUROR: On Saturday my car was broken into On Saturday.

THE COURT: This past Saturday sat.

PROSPECTIVE JUROR: Yes.

THE COURT: Reported to police.

PROSPECTIVE JUROR: Yes, sir?

THE COURT: Did they apprehend anyone?

PROSPECTIVE JUROR: No.

THE COURT: Were you satisfied with the police work ?

PROSPECTIVE JUROR: I mean there wasn't muchThey can do.

THE COURT: Will that interfere with you being fair in this case ?

PROSPECTIVE JUROR: No but it's

upsetting.

THE COURT: Of course it's upsetting. I expect that anybody that experiences anything in life that is upsetting or like that is upsetting. The question is whether you can set that aside and not say you know I am so mad I am going to take it out on somebody?

Mr. Tisch did you have your hand up?

PROSPECTIVE JUROR: About a year ago also had an auto accident; vehicle parked in front of my house drunken person side swiped it.

THE COURT: Did you report it?

PROSPECTIVE JUROR: Yes.

THE COURT: Apprehend anyone?

PROSPECTIVE JUROR: No.

THE COURT: Were you satisfied with the police work?

PROSPECTIVE JUROR: Yes?

THE COURT: Will that interfere with your.

PROSPECTIVE JUROR: No .

THE COURT: Have anyone in your family, close friend ever been arrested, charged with or convicted of a crime?

Last, anyone here served on a jury before Mr. Tinsley; how long ago?

PROSPECTIVE JUROR: Four, five years ago.

THE COURT: Was it civil or criminal?

PROSPECTIVE JUROR: Grand Jury.

THE COURT: Grand Jury is different will you listen to the law as I give it be fair to both sides?

PROSPECTIVE JUROR: Yes.

THE COURT: Anyone else; Miss Houston?

PROSPECTIVE JUROR: I served on criminal case.

THE COURT: How long ago.

PROSPECTIVE JUROR: 4 years ago.

THE COURT: What type of crime?

PROSPECTIVE JUROR: Similar?

THE COURT: Murder?

PROSPECTIVE JUROR: Yes.

THE COURT: Without telling me results did it go to verdict?

PROSPECTIVE JUROR: Yes.

THE COURT: Can you listen to law I give you be fair to both sides?

VOIRE DIRE

PROSPECTIVE JUROR: Yes. .

THE COURT: Someone else.

Miss Sistrunk how long ago.

PROSPECTIVE JUROR: I am not quite sure how many years.

THE COURT: Civil, criminal?

PROSPECTIVE JUROR: Criminal.

THE COURT: Do you remember the crime?

PROSPECTIVE JUROR: Narcotic.

THE COURT: Without telling me results did it go to verdict?

PROSPECTIVE JUROR: They settled without the jury.

THE COURT: Can you listen to law I give you be fair to both sides?

PROSPECTIVE JUROR: Yes

THE COURT: Have you or any member of family, anyone close been member of enforcement the police, Corrections; Miss Houston?

PROSPECTIVE JUROR: Nephew.

THE COURT: Nephew's a police officer?

PROSPECTIVE JUROR: Police officer.

THE COURT: Often do you see him?

VOIRE DIRE

PROSPECTIVE JUROR: Once a week?

THE COURT: Ever discuss his work with him nothing wrong if you do?

PROSPECTIVE JUROR: Sometimes.

THE COURT: There will be police testimony you think you can be objective listen to the testimony of both sides side?

PROSPECTIVE JUROR: Yes.

THE COURT: Miss Rieukah.

PROSPECTIVE JUROR: My nephew is police in Puerto Rico.

THE COURT: You don't see him too often.

PROSPECTIVE JUROR: Last year I see him from narcotic.

THE COURT: You can be fair here.

PROSPECTIVE JUROR: Not too much because my husband works; I don't understand.

THE COURT: You're's having trouble understanding English?

PROSPECTIVE JUROR: A little?

THE COURT: Did you understand everything I was talking about?

PROSPECTIVE JUROR: Yes .

THE COURT: You think you will have

VOIRE DIRE

trouble understanding?

PROSPECTIVE JUROR: I am not sure I think so I try to do my best.

THE COURT: I will excuse you. You can step down. Fill that seat.

COURT CLERK: Seat eight Orah Elsner.

THE COURT: I am going to get you up to date. Have you anybody in your family close friends ever been victim of crime, ever been convicted of crime, ever served on a jury before?

Have you any member in family been member of enforcement; no you're up to date. Anybody here who knows anybody who works in the prosecutors' office or attorney who practices primarily criminal defense work. Miss Kaufman, tell us a little about yourself include your marital status, your occupation, spouses occupation, hobbies, area where you live, your marital status.

PROSPECTIVE JUROR: Married, I am Communications Specialist.

THE COURT: Ms. Houston what do you do?.

PROSPECTIVE JUROR: Sales.

VOIRE DIRE

THE COURT: Any children.
PROSPECTIVE JUROR: Three.
THE COURT: Boys, girls?
PROSPECTIVE JUROR: Girls 19, 18, 14
THE COURT: Your education.
PROSPECTIVE JUROR: BA in English Psychology master in Psychiatry.
THE COURT: Hobbies?
PROSPECTIVE JUROR: Reading, listening to music.
THE COURT: General area don't give us home address; what section?
PROSPECTIVE JUROR: Bayridge.
THE COURT: Miss Brannigan your marital status.
PROSPECTIVE JUROR: Administrative assistant, college, I am a student
THE COURT: Hobbies?
PROSPECTIVE JUROR: Listen to music, Flatbush.
THE COURT: Miss Houston?
PROSPECTIVE JUROR: Widow.
THE COURT: Your occupation.
PROSPECTIVE JUROR: Home attendant
THE COURT: Any children?

PROSPECTIVE JUROR: Four.

THE COURT: How many boys; girls?

PROSPECTIVE JUROR: One boy three girls.

THE COURT: Youngest, oldest?

PROSPECTIVE JUROR: Oldest 42, youngest 27, bike riding, I live in Flatbush.

THE COURT: Miss Colon.

PROSPECTIVE JUROR: Single, home health aid, high school graduate, I just walking, east knock.

THE COURT: Miss Konsky?

PROSPECTIVE JUROR: Married, operating room technician, husband is engineer, two sons, 31, 19, my education nursing.

THE COURT: Hobbies?

PROSPECTIVE JUROR: Traveling, reading mostly love stories.

THE COURT: General area you live?

PROSPECTIVE JUROR: Sheepshead Bay.

THE COURT: Mr. Bovall.

PROSPECTIVE JUROR: Unmarried insurance company.

PROSPECTIVE JUROR:

THE COURT: Wife do?

VOIRE DIRE

PROSPECTIVE JUROR: I am unmarried.

THE COURT: Your education?

PROSPECTIVE JUROR: BA management traveling, photography I live in Mill Basin.

THE COURT: Mr. Singh.

PROSPECTIVE JUROR: Married, public health administrator. She is a health administrator too, two children, one boy, one girl. Girl is 27 years boy 16, Masters, reading, music, swimming, all types of books, Flatbush .

THE COURT: Miss Sistrunk?

PROSPECTIVE JUROR: Married, retired telephone company. He is retired also. He was self employed. No children, high school, cross word, watch television.

THE COURT: What kind of programs?

PROSPECTIVE JUROR: Soaps Williamsburg.

THE COURT: Mr. Jalowski.

SKWRAO: Single, software engineer. I work on cars, Greenpoint.

THE COURT: Miss Ramroop.

PROSPECTIVE JUROR: Single, nurse Masters reading Science Fiction, Sunset Park.

THE COURT: Miss Elsner.

PROSPECTIVE JUROR: Single, teachers assistant, high school, traveling, reading, all kind, Sheepshead Bay.

THE COURT: Mr. Tinsley.

PROSPECTIVE JUROR: Married, retired, transit worker, wife is a 311 operator.

THE COURT: Any children?

PROSPECTIVE JUROR: Two girls 21 and 36 high school graduate, no hobbies. I live in Flatbush .

THE COURT: Mr. Tisch.

PROSPECTIVE JUROR: Single museum exhibitor, BSA, drummer in a Blues Band, Sheepshead Bay.

THE COURT: Miss Stein?

PROSPECTIVE JUROR: Single, full time student.

THE COURT: What are you majoring in?

PROSPECTIVE JUROR: Psychology, cooking single, Sheepshead Bay head way?

THE COURT: Mr. Sklar.

PROSPECTIVE JUROR: Single, engineer, some college, I am plant electronics in Williamsburg.

VOIRE DIRE

THE COURT: Ms. Yadgarova, marital status.

PROSPECTIVE JUROR: Marital, single, history.

THE COURT: Your education.

PROSPECTIVE JUROR: Undergrad.

THE COURT: Hobbies.

PROSPECTIVE JUROR: Reading all kind.

THE COURT: You give us your education; the area you live?

PROSPECTIVE JUROR: Boro Park.

THE COURT: Ms. Zuckerman.

PROSPECTIVE JUROR: Married. He works in publishing, I have two children.

THE COURT: Boys girls?

PROSPECTIVE JUROR: Boy seven and girl three, I have a BA, psychology.

THE COURT: Books.

PROSPECTIVE JUROR: Scientific.

THE COURT: Mr. St. Jacques.

PROSPECTIVE JUROR: Married, livery driver, wife is working, .

THE COURT: What kind of work.

PROSPECTIVE JUROR: Civil.

THE COURT: What does that mean?

VOIRE DIRE

PROSPECTIVE JUROR: Do I have to explain?

THE COURT: No, children?

PROSPECTIVE JUROR: Boys 26, 18 teen, high school.

THE COURT: General area you live?

PROSPECTIVE JUROR: East New York.

THE COURT: We have to rely upon you to tell us anything you might think would interfere with you being fair, fair impartial jurors if anything that includes any physical disability that might prevent you from concentrating on a case, any pressures you may have at home that may distract you at home anything would like to bring to my attention you think might interfere with you being fair.

PROSPECTIVE JUROR: If the evidence would be maybe I wouldn't want to see it. I might get like skiddish.

THE COURT: I don't think there's be anything really --

MS. MILLUS: There are photographs.

THE COURT: There are photographs I don't think there will be an issue but there are photographs.

VOIRE DIRE

Anything anybody would want to bring to my attention, otherwise you're going to be hearing questions now starting with the Assistant District Attorney.

Their questions like mine are intended solely to find out if you are fair impartial. If there is anything would like to explain come up here, feel free.

MR. MARONE: With many attorneys when they speak to people respective jurors like yourselves, we are looking for the right case, for the right jurors. Therefore, Miss Millus and I will ask you a series of questions.

However, before I begin asking those questions there is one question I would like to put to you. You can just respond by raising your hand for any moral ethical religious reasons would any of you have a problem sitting on a case such as this as Your Honor told you it will be a murder case?

PROSPECTIVE JUROR: I don't feel safe sitting here judging somebody on a case like this. Would rather be involved in another type of case.

MR. MARONE: Is there anybody else?

Miss, Number one juror, as His Honor told you in the beginning of his instructions struck he said Miss Millus and I must prove our case beyond a reaonable doubt. If Miss Millus and I attempt to do that just use one witness would we be able to satisfy you beyond a reasonable doubt using one eye witness to --

PROSPECTIVE JUROR: Yes.

MR. MARONE: You wouldn't need anything else a smoking gun so to speak.

THE COURT: Let me --

PROSPECTIVE JUROR: I am not sure I understood.

THE COURT: People have to prove their case beyond a reasonable doubt. There are lots of ways to prove their case. The question is if they only had one witness and you were satisfied that they have proved their case beyond a reasonable doubt would you have a problem convicting the defendant; I think you already said you wouldn't have.

PROSPECTIVE JUROR: You mean if I only hear what one witness has to say; nothing from anybody else?

THE COURT: And you were satisfied

that the People have proved their case beyond a reasonable doubt, you can come in here. It is the quality of the testimony that is important not the quantity. You can have four people coming in here on the stand, all of them say to you, oh yes, I was there but I didn't see anything. At the end of that case you have to dismiss the case. So it's the quality of testimony that is important and often people commit crimes in an arena. The question is if the people prove their case that's the important thing, if they were able to prove their case beyond a reasonable doubt and they only use one witness by doing that and your satisfied the People did prove the case beyond a reasonable doubt and I will tell that you that is sufficient under the law. That's another aspect of it because I will tell you what the law is at the proper time therein; some religions that say you must have two witnesses. So what we want to make sure is that if the People do meet their burden and you're satisfied that you can find the defendant guilty.

PROSPECTIVE JUROR: Yes.

VOIRE DIRE

MR. MARONE: You will be able to do that?

PROSPECTIVE JUROR: Yes.

MR. MARONE: Second juror.

PROSPECTIVE JUROR: Can you ask the question again.

MR. MARONE: Miss Millus and I must prove to you beyond a reasonable doubt, the defendant's guilt. There is no specific way in which we must prove that. If Miss Millus and I presented to you one and only one witness, eye witness to the incident would that in fact be enough for you or would you need something further?.

PROSPECTIVE JUROR: Something further.

MR. MARONE: You will such as?.

PROSPECTIVE JUROR: Another witness.

MR. MARONE: You require two witnesses?

THE COURT: What if there is only one person that saw this? And you were satisfied after you listen to that testimony the People did prove their case beyond a reasonable doubt could you convict the defendant?

VOIRE DIRE

PROSPECTIVE JUROR: Yes.

THE COURT: It's not what you like people would like if there was a photograph taking movies of the whole scene that would be helpful too. But that's not what life is about. Sometimes these questions are a little difficult because you have never been a juror before. As I indicated it's not what you like there is a distinction if the People do prove to you there is only one witness you're satisfied you know that person you believe that person; can you convict?

PROSPECTIVE JUROR: Yes.

MR. MARONE: That witness is a child under eighteen would that affect your viewpoint of that witness' testimony?

MR. SHEINBERG: I think that's improper question for the juror as to their qualifications.

THE COURT: Will at the proper time at the end of the case give you certain guide lines. One of the guide lines is how to evaluate the testimony of a witness. And I will if necessary advise you as to different elements necessary. You're being asked

VOIRE DIRE

questions in a vacuum. You don't have the vaguest idea what the witnesses will testify to. One of the things you will take into consideration in evaluating somebody might be their age, might be how smart they are or how you perceive them when they get on the stand.

So you will take all of those things into Consideration. The question is if a witness is a minor you will take that into consideration in evaluating their testimony; can you do that?

PROSPECTIVE JUROR: Yes.

MR. MARONE: Miss Houston.

PROSPECTIVE JUROR: I don't think so.

MR. SHEINBERG: I am going to object to this line of questioning .

THE COURT: Can everybody approach here for a moment .

(off the record discussion held)

THE COURT: We are not talking about a child, a six year old. We are talking about a young adult. If a young adult was to testify and you were to believe their testimony that is the question; or would you just ignore somebody because they were a young adult? There is a

VOIRE DIRE

big difference in a five year old got on the stand and testified or a 17 year old got on the stand and testified.

MR. MARONE: Rather than asking each individual prospective juror down the line is there anyone who feels they would need more than one eye witness to an incident would need fingerprints, pictures?

PROSPECTIVE JUROR: When you say one this doesn't mean that you have fingerprints?

MR. MARONE: If I just have one witness could I prove my case to you beyond a reasonable doubt?

PROSPECTIVE JUROR: No, no evidence?

MR. MARONE: No, if one eye witness saw the incident saw the crime committed?

PROSPECTIVE JUROR: What is it?

MR. MARONE: You were robbed, let me give you an example. Usually there is not eye witnesses, you're by yourself. That came to trial. Would we need more in in your then your eye witness testimony?

THE COURT: Let me go beyond that. There is nothing to do with this case, give you an example supposing your boyfriend was to stab

VOIRE DIRE

you. And you got on the stand and you testified that your boyfriend stabbed you and a juror, would the juror be able to convict based upon your testimony?

PROSPECTIVE JUROR: No.

THE COURT: Or you want more than this?

PROSPECTIVE JUROR: No I want to know why.

THE COURT: You have to evaluate what goes on. Sure you could be lying of course. You could be lying about that, go get on the stand, could be. Lying that's what the jury is able to do, be able to evaluate the testimony listen to the testimony, evaluate it what kind of work do you do?

PROSPECTIVE JUROR: Administrative Assistant.

THE COURT: When somebody comes over to you do evaluate what they say to you if they came in say they just flew in from California didn't use a plane but used their arms to fly in can you evaluate that?

PROSPECTIVE JUROR: Yes.

THE COURT: These are not tricky

VOIRE DIRE

questions. Sometimes you think well I am a juror up here. People going to be asking tricky questions. These are not tricky questions, somebody gets on the stand, You're going to listen, say does that make sense? Did the People prove their case beyond a reasonable doubt? That's your job. You bring your experience, every day life to the courtroom your every day ability to evaluate. And there are some people that can't do that, nothing wrong with that. They shouldn't be jurors. If you can't evaluate, listen to testimony evaluate that testimony then you shouldn't be a juror. But there is nothing wrong with that. I don't want anybody to think there is anything wrong.

Now that I have explained that to you can you evaluate the testimony if you believe that one witness and the People have proven beyond a reasonable doubt their case; can you findd the defendant guilty if only one witness?

PROSPECTIVE JUROR: Yes.

PROSPECTIVE JUROR: Excuse me would that one witness be the actual victim?

THE COURT: You don't know not in

VOIRE DIRE

this case because he is dead.

PROSPECTIVE JUROR: I see.

MR. MARONE: Miss Zuckerman you had some feelings about that. Has your feeling changed or remains the same?

PROSPECTIVE JUROR: I guess I am just not familiar with the case. I am familiar with something recently. Reason I say that is someone I am close to grandson is accused of murder and throughout the trial was a gang group of people, eye witnesses. I think there was a. Gun there was no fingerprints. He was convicted without weapon and fingerprints based on witnesses, an experience I had.

THE COURT: That's what you bring the courthouse, absolutely.

MR. MARONE: Mr. Sklar if the witness did not come forward immediately upon the incident occurring. How would that affect your view as that witness testified on the stand of the witnesses' testimony?

PROSPECTIVE JUROR: Can you give an example; duration like a day or a year?

MR. MARONE: Would that make a difference to you?

VOIRE DIRE

PROSPECTIVE JUROR: I would be concerned if the witness came a year later to bring this to the police attention.

THE COURT: That's exactly the point. The point is you just used your head. You said well, I am going to evaluate all these things. You're going to take into Consideration you're being asked questions in a very abstract manner, very hard to come to conclusion in abstract manner. You have to think exactly what you think. You have to evaluate as those things come in. It's not as simple as you might think.

MR. MARONE: Could you think of any reason as to why a witness would not come forward?

PROSPECTIVE JUROR: Because they don't want to be found and killed themselves or be hurt in anyway for fingerprints.

MR. MARONE: So you would be able to understand that?

PROSPECTIVE JUROR: To some degree but like I said if time passes as much as a year it brings up questions about the witnesses integrity why they keep silent on this issue.

VOIRE DIRE

MR. MARONE: . Miss Stein, Mr. Tisch same question that I asked Mr. Sklar; how would that affect you if witness did not come forward with testimony or evidence right away?

PROSPECTIVE JUROR: Would feel a lot the way he said years, time, fear factor would come into play.

MR. MARONE: Do you think in this type of case do you feel a witness would be frightend?

THE COURT: Objection sustained go onto something else.

MR. MARONE: Mr. Tinsley, are you familiar with Halloween?

PROSPECTIVE JUROR: Yes I am familiar with it.

MR. MARONE: Have a lot of kids coming to your house on Halloween?

PROSPECTIVE JUROR: No kids come by throw some candy or change.

MR. MARONE: Neighbors children come to you?

PROSPECTIVE JUROR: Neighbors children basically people ride around Halloween not like it used to be people ride around.

VOIRE DIRE

MR. MARONE: Let's go back to when we were young when you and I were kids and we used to get dressed up. Remember when your neighbors came to your house used to get dressed up used to wear masks; have a problem identifying them?

PROSPECTIVE JUROR: I expect to see a mask expect to see costumes.

MR. MARONE: It was your neighbor somebody next door --

PROSPECTIVE JUROR: You really know somebody no matter what they put on you have been around a long time you know if they have a mask on you know.

MR. MARONE: Would you be able to know that?

PROSPECTIVE JUROR: If you are around somebody a long time just being around just look at the body, the anatomy the way they move if you are around somebody for a long time.

MR. MARONE: Miss, I saw you shaking your head, no.

PROSPECTIVE JUROR: I suppose I agree with, if you would recognize someone wearing a mask probably do it through body as much as

certain characteristics. In other words, you wouldn't have to necessarily see their actual face in order to identify a bodily gesture you're familiar with.

MR. MARONE: Being what Mr. Tinsley and Miss Kaufman said anybody think they might have a problem recognizing someone in that situation?

THE COURT: Anything else?

MR. MARONE: If I may, few questions we are all familiar what we see on T.V. be it Law and Orders, see on those shows sometimes what's called confidential informants are used confidential witnesses are unfortunately are not always of sterling character. Anyone not be able to listen to that type of witness in the witness box as Your Honor said earlier evaluate their testimony take what they say in context to the case? Anybody have a problem listening to that type of individual? You will be able to listen unbiasly?

PROSPECTIVE JUROR: Evaluate it?

MR. MARONE: You would be able?

PROSPECTIVE JUROR: Yes.

MR. MARONE: Anybody have a problem

evaluating that type of testimony? No, thank you?

THE COURT: Counsel.

MR. SHEINBERG: Good afternoon my name is George Sheinberg. I represent Glenn Cummins. Everyone here over 18 years of age anyone here under 18, anyone here go to jury school? Everyone here live in Brooklyn? That's jury school. We are asking you one thing when you come, we ask Miss Kaufman, we ask everybody else you come in here ask something, ask a witness something determine if they were credible or not credible. This is no case where you have to think about convoluted thing. You're going to hear people testify person sits here takes the witness stand. I assume you will look, listen to that person listen to what what they have to say decide whether they are telling the truth or if they are out right lying. Can you do that? That's what you're here for Mr. Singh you're over eighteen you lived in Brooklyn you have common sense?

PROSPECTIVE JUROR: I think so.

MR. SHEINBERG: Experience? That's

what you'reer going to do use your common sense every day experience, nothing magical. You never went to jury school. You live in Brooklyn that's your jury school. You have been around over eighteen years, you sir, what do you do for a living?

PROSPECTIVE JUROR: Work for insurance company.

MR. SHEINBERG: People told things you size them up?

PROSPECTIVE JUROR: Basic guide lines some people try to manipulate to get their own way. You have to evaluate what are the guide lines.

MR. SHEINBERG: When you do that you look at a person to evaluate what they say, make a decision.

Ma'am an-bly administrative assistant you meet people; is that right?

PROSPECTIVE JUROR: Yes.

MR. SHEINBERG: You determine whether people are telling the truth or lying how do you do that?

PROSPECTIVE JUROR: Evaluate them.

MR. SHEINBERG: How?

VOIRE DIRE

PROSPECTIVE JUROR: How they express themselves.

MR. SHEINBERG: Right you look at them determine how they look how they answer questions. It's really simple yet hard. This is a murder case not a case where we are talking about spitting on a sidewalk, very serious matter. This is what you're asked to do. Can you do it ma'am?

PROSPECTIVE JUROR: Yes.

MR. SHEINBERG: Ma'am any problem?

PROSPECTIVE JUROR: No.

MR. SHEINBERG: I assume you folks watch television once in a while. Mr. Tinsley , you ma'am, Mr. Sklar you watch TV?

PROSPECTIVE JUROR: Try to avoid it as much as possible.

MR. SHEINBERG: Do you read a newspaper?

PROSPECTIVE JUROR: When I am in it.

MR. SHEINBERG: Ever hear the word indictment?

PROSPECTIVE JUROR: Yes.

MR. SHEINBERG: You sir when you hear he has been indicted what comes to mind. Has

done something right. Can you do us a favor when you're selected as jurors can you use your oath put that out of your mind. Can you do that? There is no problem with that. This is not a case where you have to sit here make convoluted decisions. You're going to listen to a witness whether the witness is 17, whether the witness has told the police that day or five years later. You have to sit, listen to the evidence make a decision whether or not people have told the truth beyond a reasonable doubt. Can you do that?

PROSPECTIVE JUROR: Yes.

MR. SHEINBERG: I think judge has mentioned the fact there may come a time this is a murder case that Glenn Cummins may not testify, take the witness stand, may not call any witnesses.

Can you assure us or commit yourself to the fact you won't hold it against him?

PROSPECTIVE JUROR: I won't.

MR. SHEINBERG: You wouldn't hold it again him?

PROSPECTIVE JUROR: No I wouldn't.

MR. SHEINBERG: Some of you have

children, several children, always comes a dispute. You have children; isn't that correct Ms. Houston?

PROSPECTIVE JUROR: Yes.

MR. SHEINBERG: You remember when they had disputes. you always say I want to hear your side of the story. I want to hear your side. You may not hear that. In this case will you accept, make fair, impartial verdict. You have to commit yourself if you want to be a juror, if you are selected you have to listen to the testimony to the facts. You have to determine if a witness is telling the truth. That's your business. If Court tells you the law you must accept it. Can you do that, Mr. Sklar you?

PROSPECTIVE JUROR: Yes.

MR. SHEINBERG: You may not like it say this is crazy but you're no legislature if you become a juror. Mr. Tinsley you have to commit yourself that the facts are your business, that the law as given by the Court can you do that?

PROSPECTIVE JUROR: Yes.

MR. SHEINBERG: Ma'am?

VOIRE DIRE

PROSPECTIVE JUROR: Yes.

MR. SHEINBERG: When I sometimes listen to a news broadcast I would like to hear a defendant testify. But he doesn't have to maybe many, many reasons he may have been arrested a couple of years after the incident occurred. He may not know where he was things of that nature. There maybe many reasons.

Can you say to the Court that if you're selected as a juror it's not going to affect you; no problems with that?

PROSPECTIVE JUROR: No.

THE COURT: Anything else?

MR. SHEINBERG: Miss Kaufman, you told us you were a victim of a crime, mugging I think it was you didn't report it for the reason you were afraid.

PROSPECTIVE JUROR: Very long time ago. I was walking with my two year old I was shaken very scared.

MR. SHEINBERG: No other reason but the fact you were frightend at the time?

PROSPECTIVE JUROR: I had other children.

MR. SHEINBERG: One of the charges I

think the Court read it's murder. The other charges is intimidating a witness, tampering with the witnesses. You're going to hear testimony about that. Can you assure us that you will put what happened to you a long time ago out of your mind, listen to the testimony what you hear here, make a decision. Can you do that? Anybody have a problem with that.

I can stand here for the next half hour ask you a lot of questions. Only thing I want to assure if you are selected as jurors can you be fair, impartial? (all prospective jurors nod)

THE COURT: Ladies and gentlemen of the jury for the people in the audience going to send you out to lunch right now. Please be back two fifteen. do not discuss this case among yourselves and don't come to any conclusions until all the evidence is in and I charge you on the law. Give you some other admonitions. You're not to discuss this case among yourselves or with anyone else, not to listen to or read anywhere the offense as allegedly committedly regarding this case until all the evidence is in, I charge you on the

law. Anybody approaches you attempt to influence you bring to the Court's attention promptly.

Do not discuss it with the other jurors. Jurors the parties are not to greet each other or speak to one another. If you are on the elevator with any of the attorneys they don't say good morning or good afternoon, they are not permitted. Do not come into the courtroom. Please wait out side until the courtroom calls you in. If one of you are missing we all wait. So please make sure that you take into consideration the elevator all the problems with getting up here. We will see you folks back here 2:30.

Same admonition you're going to stay out side. This will take ten minutes. Do not discuss this case with anyone. Do not leave. We are going to be doing whatever we have to do going to be back here five or ten minutes. Be back here as well.

(prospective jurors exiting).

THE COURT: One through 12 cause? People one through 12?

MR. MARONE: People would look to

strike Brannigan juror number two,.

THE COURT: Denied.

MR. MARONE: Houston.

THE COURT: What number?

MR. MARONE: three three.

THE COURT: Denied.

THE COURT: Next?

MR. MARONE: Miss Ramroop number seven?

THE COURT: Yes, granted.

THE COURT: Defense one through 12.

MR. SHEINBERG: No cause.

THE COURT: Peremptory People one through 12?

MR. MARONE: Two, Miss Brannigan, three, Houston,.

MR. MARONE: Number 12 Mr. Sklar.

THE COURT: Defense peremptory.

MR. SHEINBERG: One, Miss Kaufmann than number four, Miss Colon, juror five Miss Konsky, Singh.

The other jurors are acceptable.

THE COURT: How many do we have?

COURT CLERK: We have five judge.

VOIRE DIRE

THE COURT: Thirteen through eighteen cause?

MR. MARONE: Miss Yadgarova 13 she stated more --

THE COURT: After I spoke to her that's denied.

MR. MARONE: Number fourteen Miss Yadgarova ,Zuckerman number 15.

MR. SHEINBERG: Consent.

THE COURT: Fifteen teen.

THE COURT: That's consent. For cause defense ?.

MR. SHEINBERG: No.

THE COURT: Perempt People?

MR. MARONE: Number 13, Yadgarova.

THE COURT: And?

MR. MARONE: Number seventeen, Mr. Jean Jacques.

THE COURT: Okay.

THE COURT: Defense.

MR. SHEINBERG: Number 18.

COURT CLERK: We have two.

THE COURT: So we have seven altogether. Off the record.

Off the record

VOIRE DIRE

THE COURT: Which ones have you agreed on?

MR. SHEINBERG: Juror number.

MR. MARONE: Number four Miss Colon for spot three. And number two Brannigan for spot number four.

MR. SHEINBERG: How is that again that?

THE COURT: Give me that again.

MR. MARONE: Miss2 \colon\Colon who was number four will be number three.

THE COURT: Alternate number three.

MR. MARONE: And Brannigan whose's number two will be number four.

THE COURT: That acceptable?

MR. SHEINBERG: Yes.

THE COURT: Defense acceptable?

MR. SHEINBERG: Yes, sir.

THE COURT: Bring the jury in.

Off the record

(jury entering)

THE COURT: Folks take the same seats you had before. Could I get both sides up here for a moment?

Off the record

VOIRE DIRE

THE COURT: Ladies and gentlemen of the jury if your name is called please remain seated. If your name is not called please wait on the side..

COURT CLERK: Juror one, Henry Bovall, juror number two Ora Elsner, juror number three, Major Tinsley, juror four Alex Tisch Tisch, juror five, Maderleine Stein, six, Ramlochhand Singh, seven Annie Sistrunk alternate number three, Inocencia Colon and alternate four Kahli Brannigan.

If your name was called remain seated if your name was not called please wait outside. We will be sending you downstairs with the thanks of the Court.

COURT CLERK: Bovall, Elsner, Tinsley, Tisch, Stein, Singh, Sistrunk ,Colon, Brannigan.

THE COURT: For you folks ,thanks of the Court.

Jurors acceptable to the People?

MR. MARONE: Acceptable.

THE COURT: Please rise to be sworn in.

COURT CLERK: Raise your right hand.

MR. SHEINBERG: I think one of the jurors would like to say something?

JUROR: Approach ?

THE COURT: Swear in the rest of the jurors please.

Off the record

COURT CLERK: (jurors were administered the oath)

THE COURT: You're going to be shown to a room now. That's where you will be going to from now on. You're going home right after you're shown that room, come back tomorrow morning.

JUROR: this case going past this week?

THE COURT: Take about seven days.

PROSPECTIVE JUROR: Past 5:00?

THE COURT: By 5:00 we are usually finished, very unusual we stay beyond five.

JUROR: I understand you said we don't come in on Fridays?

THE COURT: Correct. Please be here 10:30 tomorrow morning. Go directly to the jury room which they will show you right now also You're going going home right afterward.

We will see everybody here tomorrow morning please be here on time. If one of you are not here. Do not discuss this case among yourselves not to come to conclusion until all the evidence is in, I charge you on the law.

(jurors exiting) jerk

A F T E R N O O N S E S S I O N)

All right. Let's bring the jury in please.

COURT OFFICER: Jury entering.

THE COURT: Your name is called please take your belongings,say present or here.

COURT CLERK: Seat number one Chave Brenner, seat two, Winsome Harris, seat three Deyanira Gomez, seat four, Earlin Clarke, seat five, William Chalkley, seat six Felicia Glover, seat seven, John Carrasquillo, seat eight, Anzie Fraser, seat nine, Tasha Brown, seat ten, Janet Brathwaite, seat eleven, Juan Candelario, seat twelve, Letitia Bhola, seat thirteen Olga Cadet, seat fourteen Yolanda

Sanakerdavis, seat fifteen, Bertha Senelon, seat sixteen, Anait Dabagian, seat seventeen Esther Vernon, Seat eighteen, Frederick Rodriguez .

THE COURT: Ladies and gentlemen this is called the second round for obvious reasons. Second time I will be asking questions I asked earlier goes faster than the first round. You have had kind of opportunity to hear what the case is about.

Have any of you been the victim of crime; Miss Glover?

PROSPECTIVE JUROR: Robbery gun point.

THE COURT: How long ago?

PROSPECTIVE JUROR: '91.

THE COURT: Was it yourself?

PROSPECTIVE JUROR: Yes.

THE COURT: Was it reported ?

PROSPECTIVE JUROR: Yes.

THE COURT: Did they apprehend anyone?

PROSPECTIVE JUROR: No?

THE COURT: There will be police testimony obviously other Officers that won't

be involved in your case. Will you be able to listen to that testimony be fair listening to both sides.

PROSPECTIVE JUROR: Yes.

THE COURT: This defendant obviously had nothing to do with your case. Will you be able to be fair to your case as yourself to be the victim of crime .

PROSPECTIVE JUROR: I guess so. I will have to see the evidence first.

THE COURT: Of course you will have to see the evidence. My question is once again I want to make sure that also I indicated there are no right wrong answers to the question I give. Each victim of crime might want to take it out on other people which has nothing to do with the case yourself. I am not not finding fault with you. I want to make sure if you are picked as juror you will listen to the law as I give it to you, you will make your decision based upon the evidence. Can you do that?

PROSPECTIVE JUROR: Yes.

THE COURT: Anyone else, Ms. Senelon?

PROSPECTIVE JUROR: Goes a long time

VOIRE DIRE

ago my son was mugged at gun point.

THE COURT: Was it reported to the police?

PROSPECTIVE JUROR: Yes.

THE COURT: Did they catch anyone?

PROSPECTIVE JUROR: No.

THE COURT: Were you satisfied with police work?

PROSPECTIVE JUROR: Yes .

THE COURT: Will that interfere with you being fair in this case?

PROSPECTIVE JUROR: No ,so long ago it doesn't matter any more ago done marry any more.

THE COURT: Anybody else? Have you or anyone in your family or anyone close been arrested, charged with or convicted of crime? Anybody here serve as a juror before; Miss Brown how long ago?

PROSPECTIVE JUROR: Eight years.

THE COURT: Civil or criminal?

PROSPECTIVE JUROR: Civil.

THE COURT: Civil case has different standard of proof than criminal. Can you listen to the law as I give it be fair to both

VOIRE DIRE

sides.

PROSPECTIVE JUROR: Yes.

THE COURT: Miss Senelong how long ago?

PROSPECTIVE JUROR: 4 years.

THE COURT: Civil or criminal?

PROSPECTIVE JUROR: Civil.

THE COURT: That has a different standard of proof than criminal case. Can you listen to law as I give it be fair to both sides.

PROSPECTIVE JUROR: Definitely.

THE COURT: Mr. Rodriguez how long ago?

PROSPECTIVE JUROR: 5 years ago.

THE COURT: Civil, criminal?

PROSPECTIVE JUROR: Civil.

THE COURT: Can you listen to the law as I give it?

PROSPECTIVE JUROR: Yes.

THE COURT: Has any member of family friends been members of enforcement; the police etc., Miss Senelon ?.

VOIRE DIRE

PROSPECTIVE JUROR: My son is private investigator .

THE COURT: He works for himself?

PROSPECTIVE JUROR: No he works for company .

THE COURT: Will that interfere with you being fair in this case you can be fair?

PROSPECTIVE JUROR: Yes.

THE COURT: Someone else had their hand up Miss Glover?

PROSPECTIVE JUROR: My brother is a Transit Police Officer.

THE COURT: There will be police testimony be able to listen to be fair to both sides?

PROSPECTIVE JUROR: Yes.

THE COURT: Someone in the back.

PROSPECTIVE JUROR: My son in law is a cadet to be a cop.

THE COURT: Will that interfere with you being fair.

PROSPECTIVE JUROR: No it won't.

THE COURT: Anybody here know anybody that works in the prosecutor's office any

attorney who practices primarily criminal defense work?

PROSPECTIVE JUROR: Cousin is a lawyer.

THE COURT: Does he do criminal work?

PROSPECTIVE JUROR: Other side on the other side Family Court.

THE COURT: Will that interfere with you being fair this case?

PROSPECTIVE JUROR: No.

THE COURT: Starting with you Miss Brenner please tell us your marital status?.

PROSPECTIVE JUROR: Married.

THE COURT: Occupation?

PROSPECTIVE JUROR: Teacher assistant.

THE COURT: What does your husband do?

PROSPECTIVE JUROR: Painter.

THE COURT: Any children?

PROSPECTIVE JUROR: Yes two sons.

THE COURT: How old?.

PROSPECTIVE JUROR: One thirty five, one thirty.

VOIRE DIRE

THE COURT: Your education?

PROSPECTIVE JUROR: 2 years college.

THE COURT: Hobby?

PROSPECTIVE JUROR: Books.

THE COURT: What kind of books?

PROSPECTIVE JUROR: Anything.

THE COURT: What section do you live.

PROSPECTIVE JUROR: Sheepshead Bay?

THE COURT: Miss Harris.

PROSPECTIVE JUROR: Single, home attendant.

THE COURT: Your education?

PROSPECTIVE JUROR: High school.

THE COURT: Hobbies?

PROSPECTIVE JUROR: Reading, watching television.

THE COURT: What kind of books?

PROSPECTIVE JUROR: Any kind.

THE COURT: What kind of television program?

PROSPECTIVE JUROR: Court T.V.

THE COURT: Little different here than Court T.V. everything happens there in an hour. It's not going to happen here in an hour.

THE COURT: What does your husband do?

PROSPECTIVE JUROR: Single.

THE COURT: What section do you live?

PROSPECTIVE JUROR: Flatbush?

THE COURT: Miss Gomez, your marital --

PROSPECTIVE JUROR: Married.

THE COURT: Occupation.

PROSPECTIVE JUROR: Clerk.

THE COURT: Husband.

PROSPECTIVE JUROR: Sales manager.

THE COURT: Children.

PROSPECTIVE JUROR: Twenty-one boy one girl both three.

THE COURT: Your education?

PROSPECTIVE JUROR: Graduated from high school.

THE COURT: Hobby.

PROSPECTIVE JUROR: Listening to music.

THE COURT: General area you live?

PROSPECTIVE JUROR: Bushwick.

THE COURT: Mr. Clarke, marital status?

PROSPECTIVE JUROR: Married, nursing.
THE COURT: Your wife.
PROSPECTIVE JUROR: Nursing also.
THE COURT: Any children?
PROSPECTIVE JUROR: Yes one.
THE COURT: Boy or girl How old.
PROSPECTIVE JUROR: Boy 26.
THE COURT: Your education.
PROSPECTIVE JUROR: College.
THE COURT: Hobbies.
PROSPECTIVE JUROR: Music, sports.
THE COURT: General area you live?
PROSPECTIVE JUROR: Flatbush.
THE COURT: Mr. Chalkley marital status.
PROSPECTIVE JUROR: Single.
THE COURT: Occupation?
PROSPECTIVE JUROR: Architect.
THE COURT: Education?
PROSPECTIVE JUROR: Undergrad.
THE COURT: Hobbies?
PROSPECTIVE JUROR: Photography, music .
THE COURT: Area you live?
PROSPECTIVE JUROR: Williamsburg.

VOIRE DIRE

THE COURT: Miss Glover.

PROSPECTIVE JUROR: Single, investigator, college degree, travel, reading.

THE COURT: What kind of books?

PROSPECTIVE JUROR: Autobiorgraphies.

THE COURT: Area you live?

PROSPECTIVE JUROR: East New York.

THE COURT: Miss Davis, You should be sitting up front. Miss Cadet switch seats want to switch seats with her in the back.

THE COURT: Ms. Davis marital status.

PROSPECTIVE JUROR: Married.

THE COURT: Occupation?.

PROSPECTIVE JUROR: Home Health Aid.

THE COURT: Husband do?

PROSPECTIVE JUROR: Retired.

THE COURT: What did he do?

PROSPECTIVE JUROR: Construction?

THE COURT: Children?

PROSPECTIVE JUROR: No.

THE COURT: Your education?

PROSPECTIVE JUROR: High school.

THE COURT: Hobbies?

PROSPECTIVE JUROR: None really.

VOIRE DIRE

THE COURT: You watch television?

PROSPECTIVE JUROR: Sometimes.

THE COURT: What do you like to watch?

PROSPECTIVE JUROR: Comedy.

THE COURT: Area you live?

PROSPECTIVE JUROR: Brooklyn Flatbush.

THE COURT: Miss Your marital status?

PROSPECTIVE JUROR: Single.

THE COURT: Occupation.

PROSPECTIVE JUROR: High school.

THE COURT: What do you do for a living?

PROSPECTIVE JUROR: Home attendant.

THE COURT: You went to high school?

PROSPECTIVE JUROR: Yes.

THE COURT: Your education?

PROSPECTIVE JUROR: Yes. I am mechanical engineer but I can't work here by my experience.

THE COURT: In the old country that's where you work.

PROSPECTIVE JUROR: Yes.

THE COURT: Hobby.

VOIRE DIRE

PROSPECTIVE JUROR: I like this about famous people.

THE COURT: What section do you live?

PROSPECTIVE JUROR: Benshonhurst.

THE COURT: Mr. Rodriguez your marital status.

PROSPECTIVE JUROR: Married, store manager.

THE COURT: What does your wife do?

PROSPECTIVE JUROR: Home attendant.

THE COURT: Any children?

PROSPECTIVE JUROR: Yes one boy.

THE COURT: How old?

PROSPECTIVE JUROR: 4 years.

THE COURT: Your education?

PROSPECTIVE JUROR: Television sports Williamsburg.

THE COURT: Would you tell me what you do for a living?

PROSPECTIVE JUROR: Store manager.

THE COURT: Mr. Carrasquiello marital status?

PROSPECTIVE JUROR: Divorced postal worker, daughter eight years old high school, computer and music.

VOIRE DIRE

THE COURT: General area you live?.

PROSPECTIVE JUROR: Marine Park.

THE COURT: Miss Frazer your marital status?

PROSPECTIVE JUROR: Single, staff developer, Masters, Scrabble, Flatbush.

THE COURT: Miss Brown, marital status?

PROSPECTIVE JUROR: Married, airline manager, bus operator, two girls nine, five, boy three, college degree, baking, Canarsie.

THE COURT: Miss Brathwaite.

PROSPECTIVE JUROR: Single, cook, high school, cooking.

THE COURT: General area you live?

PROSPECTIVE JUROR: Flatbush bush.

THE COURT: Mr. Candalario.

PROSPECTIVE JUROR: Single, security guard, high school graduate, eat,.

THE COURT: General area you live?.

PROSPECTIVE JUROR: Bed Stuy.

THE COURT: Miss Bhola ?.

THE COURT: We are in the wrong place.

PROSPECTIVE JUROR: I am Miss Bhola

we got to switch then .

THE COURT: Miss Bhola your marital status?

PROSPECTIVE JUROR: Single social worker getting my Masters sleeping.

THE COURT: Your education?

PROSPECTIVE JUROR: Getting my Masters, Prospect Heights.

THE COURT: Miss Cadet.

PROSPECTIVE JUROR: Single, home attendant, no.

THE COURT: Your education?

PROSPECTIVE JUROR: No.

THE COURT: Did you have any schooling?

PROSPECTIVE JUROR: No I go to school.?

THE COURT: Your hobbies?

PROSPECTIVE JUROR: Yes.

THE COURT: What do you like to do when you relax ?

PROSPECTIVE JUROR: Cooking do something in my house.

THE COURT: What section do you live?

PROSPECTIVE JUROR: Kings Highway.

VOIRE DIRE

THE COURT: Miss Senelon.

PROSPECTIVE JUROR: Single, retired non-profit accounting,.

PROSPECTIVE JUROR: Masters, reading singinging, ministry. Park Slope.

THE COURT: Miss Vernon.

PROSPECTIVE JUROR: Single, assistant clerk, I got my GED, reading and dancing sports

THE COURT: General area that you live?

PROSPECTIVE JUROR: East New York.

THE COURT: As I indicated to the other jurors no one knows you as you know yourself. Therefore, we have to rely upon you to tell us anything you might think will interfere with you being fair impartial jurors. Any of you like to bring anything to my attention that might prevent you from being; fair; includes any physical disability which might prevent you from being fair, concentrate straight on the case, any pressures at home that would distract you from the case, during the time you will sit as a juror. You're directed as follows not to discuss this case among yourselves or anyone else, not to read

listen to discussion about this case, might be reported by any media, not to visit, view premises of the place/places where these incidents allegedly took place. If anyone approaches you or attempts to influence you please bring it to the Court's attention. The jury is directed not to greet each other or speak to one another. I am at this moment placing you under these rules of evidence. You will Now be questioned by the Assistant District Attorney. Their questions like mine are intended solely to make sure you can be fair, impartial. If one of them asks a question you will rather answer privately give me a reason, say you want to come up here and discuss it privately. You're sworn to tell the truth.

MS. MILLUS: Earlier you heardd everybody was listening when Mr. Marone was up here. You heard about one witness say there is only one witness in the case that I use that I.D.'d the defendant as the person who committed the crime. Does anyone feel the testimony of one witness is not enough to find someone guilty Miss Glover.

VOIRE DIRE

PROSPECTIVE JUROR: Think if that person is there, that's the only eye witness you have to go by that.

MS. MILLUS: You said you were victim of a crime were you by yourself?

PROSPECTIVE JUROR: Yes.

MS. MILLUS: I understand no one was caught in that instance. But if case went to trial Miss Glover would get up on the stand tell you what happened right?

PROSPECTIVE JUROR: Yes.

MS. MILLUS: Talked about before evidence, testimony what a witness is going to be on the stand telling you is evidence.

Miss Brown, would Miss Glover's testimony be enough to convict a person if she is the one it happened to, she is the only person there I.D. the defendant as committing the crime?

PROSPECTIVE JUROR: Depends on the testimony if it was convincing to me.

MS. MILLUS: So you judge that persons' credibility if after you judge that persons' credibility you believe that person

VOIRE DIRE

the judge will give you that standard, you're able to convict?

PROSPECTIVE JUROR: Yes.

MS. MILLUS: Miss Brenna what is your opinion on that. You listened to Miss Glover testify. She tells you what happened. You believe her beyond a reasonable doubt. That's the only witness going to tell you that the defendant committed the crime; is that enough?

PROSPECTIVE JUROR: I think so yes.

MS. MILLUS: When you say you think so you have to be here if that person and the judge is going to tell you the standard we have to prove would that be enough?

PROSPECTIVE JUROR: Its' enough of evidence if she tells you can see her.

MS. MILLUS: Would that mean you would view her credibility judge her if what she said you believed that that's what she said happened would you be able to convict?

PROSPECTIVE JUROR: Yes.

MS. MILLUS: As Mr. Marone said before we are not trying to pry. If this is not the case for you maybe another case is. I

need your honesty and if you have a problem with that, is that one witness going to be enough provided you believe them. You believe that is what happened?

PROSPECTIVE JUROR: Probably yes.

MS. MILLUS: Probably.

PROSPECTIVE JUROR: Yes.

MS. MILLUS: Miss Harris is it enough?

PROSPECTIVE JUROR: If that's the only witness yes.

MS. MILLUS: You believe that one witness that's enough?

PROSPECTIVE JUROR: Yes.

MS. MILLUS: Miss Gomez. .

PROSPECTIVE JUROR: Yes.

MS. MILLUS: Mr. Candelaria what do you think?

PROSPECTIVE JUROR: Yes she got to tell her story correct she got to believe me if she is trying or maybe she --

MS. MILLUS: You have to believe her how do you judge someone's credibility?

PROSPECTIVE JUROR: Way she approach herself, how she carry herself, tells her story

what happened you know make believe that's what what happened.

MS. MILLUS: Fair to say we all understand that credibility is we view someone every day we tell if they are credible if someone is telling us a story, they are telling us what happened. You're not going to put common sense behind you. You're going to use that. You can understand they are nervous up there correct?

PROSPECTIVE JUROR: Uh-huh.

MS. MILLUS: Automatically witness putting her head down maybe scared, nervous would that automatically make you say that witness isn't telling you the truth?

PROSPECTIVE JUROR: I guess depend what she says. If she don't have to look at me but if her story comes correct maybe I can you know --

MS. MILLUS: But that one witness testimony would be enough for you providing you found her credible?

PROSPECTIVE JUROR: Yes.

MS. MILLUS: Miss Brathwaite is the one witness enough?

PROSPECTIVE JUROR: Yes.

MS. MILLUS: It would be enough as long as you believe them and we proved our case beyond a reasonable doubt that one witness?

PROSPECTIVE JUROR: Yes.

MS. MILLUS: Miss Bhola.

PROSPECTIVE JUROR: That is enough.

MS. MILLUS: That one witness is enough.

Miss Cadet do you understand the question?

PROSPECTIVE JUROR: Some things.

MS. MILLUS: Are you having a hard time hearing me not talking loud enough?

PROSPECTIVE JUROR: Yes first time I am coming for --

MS. MILLUS: So you're having a little trouble understanding me?

PROSPECTIVE JUROR: I am listening a little bit not too much.

MS. MILLUS: Do you understand a little bit?

PROSPECTIVE JUROR: Little bit not too much.

MS. MILLUS: Miss Senelong one

witness enough?

PROSPECTIVE JUROR: Depending how that witness answers the questions.

MS. MILLUS: When you say answer the question, you haven't heard anything yet. You believe that witness beyond a reasonable doubt can you convict?

PROSPECTIVE JUROR: Yes.

MS. MILLUS: And Miss Senelon how do you feel I am sorry Vernon my mistake one witness enough?

PROSPECTIVE JUROR: Supposed to be enough but he you know you got to see the case you got to look at their eyes movement all that.

MS. MILLUS: Then sometimes people do forget faces once they get nervous lot of people do convict innocent people. I know I am kind of stretching it.

PROSPECTIVE JUROR: But you said that one person.

MS. MILLUS: You believe that one person --

PROSPECTIVE JUROR: If it's truly right.

VOIRE DIRE

MS. MILLUS: If you believe that one person then you say it's okay you have to evaluate them?

PROSPECTIVE JUROR: Right. You have to evaluate them correctly then I will probably.

MS. MILLUS: If witness is a teenager that witness is someone who when the incident happened was 15, 16 years old does that change does that change your mind because the fact they are younger a teenager because they can't tell what happened.

PROSPECTIVE JUROR: No.

MS. MILLUS: Mr. Rodriguez, now you have one witness in fact fact witness is a teen does that in any way affect your ability to judge that person merely because they are a teen?

PROSPECTIVE JUROR: No.

MS. MILLUS: You don't think it affects their ability to view someone?

MS. MILLUS: Can be 16 years old depends how she answer the questions. I believe they can tell what happened.

MS. MILLUS: Miss Davis how do you

feel that the witness, going to learn is someone young. You feel because of someone's age they didn't see what they saw or affects their ability to tell you what happened?

PROSPECTIVE JUROR: I don't think so.

MS. MILLUS: When you say you don't think so Do you have a feeling well they are young maybe they didn't see what they? Saw.

PROSPECTIVE JUROR: Most people remember the same thing.

MS. MILLUS: That means you listen the same as any other witness maybe ten, 50, four doesn't matter just going to listen.

PROSPECTIVE JUROR: Yes.

MS. MILLUS: Miss Dabagian fact witness is young 15 does that have any effect affect on ability for that witness to tell the truth?

PROSPECTIVE JUROR: Young people more honest than the old people.

MS. MILLUS: Miss Fraser how do you feel about that the witness is young 15 if you may not think that's young do you have any feeling you feel that person can't be telling the truth?

VOIRE DIRE

PROSPECTIVE JUROR: No, I think they can be truthful, be honest.

MS. MILLUS: Mr. Rodriguez, I am sorry Mr. Carrasquiello how do you feel about that the age of the witness?

PROSPECTIVE JUROR: Age doesn't really matter if he saw what he, she saw or she saw what she saw as long as they present it properly. I don't think there should be a problem.

MS. MILLUS: How about a witness let's say over lunch time I had a scarf on my face?

MR. SHEINBERG: Objection.

THE COURT: Sustained as to form.

MS. MILLUS: Someone, if you have a relationship you know someone for a long time you might not see their entire face would you still recognize them?

MR. SHEINBERG: Objection.

THE COURT: Overruled.

MS. MILLUS:

MS. MILLUS: Miss Brathwaite.(no response) Or even use the cold example when you know in the cold when you're all bundled up

if you know somebody you have been friends number of years would you recognize them when they are dressed up for cold weather? I guess so.

MS. MILLUS: You guess so.

PROSPECTIVE JUROR: Yes.

MS. MILLUS: Mr. Candalaria Would you still recognize that person or say no when that person is dressed up in scarves, hat I wouldn't know them.

PROSPECTIVE JUROR: You got to describe the situation.

MS. MILLUS: The situation is if you see me now you have only seen from this morning it's cold out I put my scarf, hat on.

PROSPECTIVE JUROR: I wouldn't recognize you.

MS. MILLUS: You couldn't recognize me.

PROSPECTIVE JUROR: No.

MS. MILLUS: Because you just met me earlier today.

PROSPECTIVE JUROR: Yes.

MS. MILLUS: How about if you know me for a year.

VOIRE DIRE

PROSPECTIVE JUROR: Yes I can tell.

MS. MILLUS: So if you are familiar with the person Mr. Clarke can you see if you have known somebody even if they may change their appearance in a way not be fully exposed to you you would still recognize that? Person.

PROSPECTIVE JUROR: Yes.

MS. MILLUS: You will think that would be any problem for you. You would understand you would still know me even if I wasn't like this but covered up with a scarf or hat or what-have-you.

PROSPECTIVE JUROR: Yes.

MS. MILLUS: Mr. Chalkley do you understand that's possible maybe just because you don't see my entire face you would still if you knew me you will still recognize me regardless if I had the hat scarf much on.

THE COURT: Objection sustained as to form. There are a lot of things involved in something like that what the lighting is, where it is. You can take all these things into consideration when you hear testimony; is that correct.

MS. MILLUS: Mr. Marone also talked

about this morning you learned from a witness who you learned is going to testify but got a deal because he had an open case. Anybody feel just because that witness got a deal to testify before, you automatically can't believe him.

THE COURT: Let me interject on that. I am going to tell you that You're going to take everything into consideration if in fact some testimony does come forth like that You're going to take it into consideration. The question is will you as D.A. properly indicated will you automatically not even listen to the person if that occurs; will you be able to listen to them evaluate that as part of evaluating the person?

MS. MILLUS: Thank you, judge.

THE COURT: Anything else?

MS. MILLUS: Can I go go into it? Miss Harris, do you have a problem with the witness who got a deal who's going to give information because the fact they they have an open case they are getting a deal to testify before you that you can't believe that person?

MS. MILLUS: I don't know what deal is.

VOIRE DIRE

MS. MILLUS: They have an open case they are going to testify before you. They committed a criminal act meaning it's a plea bargain. They are going to testify that might affect their sentence on the open case that clear?.

PROSPECTIVE JUROR: No.

MS. MILLUS: You don't understand?

PROSPECTIVE JUROR: No.

THE COURT: Mr. Clarke.

PROSPECTIVE JUROR: No.

MS. MILLUS: Do you understand the? Question?

PROSPECTIVE JUROR: Yes I do?

MS. MILLUS: That person gets up on the stand you know that they have an open case their open case is going to a affect their testimony. Do you feel you couldn't believe that person?

PROSPECTIVE JUROR: Evaluation will be taking all the factors into consideration after the people spoke you have to sift through.

MS. MILLUS: You still listen to it just as if somebody had a criminal record would

you automatically say nope cannot listen to them you can listen to them?

PROSPECTIVE JUROR: Yes.

MS. MILLUS: You evaluate as part of your evaluation whether to believe the person or not. Once again this is all done in an abstract manner. You don't know what the facts are. You take all these things into consideration once again as I told you earlier you must evaluate any witness who gets up there that is one of the things you will take into consideration in whether you evaluate the whether you believe the person or not .

Miss Frazer would you be able to listen to that person?

PROSPECTIVE JUROR: Yes.

MS. MILLUS: Wouldn't affect your ability to maybe they have an open case. They maybe testifying here. That wouldn't affect your ability to listen to them?

PROSPECTIVE JUROR: No.

MS. MILLUS: Miss Gomez would that affect your ability to listen to them knowing have a past.

PROSPECTIVE JUROR: No I still listen

to them.

MS. MILLUS: Then you view their credibility that way?

PROSPECTIVE JUROR: Yes.

MS. MILLUS: Miss Harris after that a little more they might not be the person that you want your daughter dating would that bother you?

PROSPECTIVE JUROR: No.

MS. MILLUS: You able to listen to that person like anyone else?

PROSPECTIVE JUROR: Yes.

THE COURT: Thank you.

THE COURT: Counsel.

MR. SHEINBERG: You know you have to listen no who takes that witness stand. You accept that; any problem whether a person is 16 years old, 17 years old has a criminal record you have to listen to that person. It's your function to listen to them, make a decision whether they are telling the truth or not you accept --

PROSPECTIVE JUROR: Yes.

MR. SHEINBERG: You have been around more than eighteen years I assume when you

listen to a person tell you something how do you make a determination whether They are telling you the truth?

PROSPECTIVE JUROR: Evaluate mannerisms ,expression how they --.

MR. SHEINBERG: What about if they say one think one time another thing another time, inconsistent .

PROSPECTIVE JUROR: You have to keep track of the contradictions.

MR. SHEINBERG: Being jurors I think I mentioned it to the other jurors. It's not like you're in jury school. You live in Brooklyn and you meet people every single day they tell you things you have to make a decision. That's what we ask you to do in this case. I think the judge mentioned obviously you evaluate people in our country. We try cases which people, no affidavits, person takes this witness stand person is asked questions You're going to have to listen. Can you do that, can you ma'am.

PROSPECTIVE JUROR: Yes.

MR. SHEINBERG: That's your function hear what they say if you believe them that's

what you believe. If you don't believe them you have to do that also. Can you do that?

PROSPECTIVE JUROR: Yes.

MR. SHEINBERG: You were asked questions about one witness judging person testifying, person of seventeen years old something of that nature. Obviously if that person said she saw it but you have to determine whether they are telling the truth how you do that?

PROSPECTIVE JUROR: Based on how the person says it, how they say it. You look in their eye you can tell if they are being shifty you listen to inconsistencies.

MR. SHEINBERG: Do that every day?

PROSPECTIVE JUROR: Yes.

MR. SHEINBERG: We all do that every day. There is no magic, just using your every day common sense, when you hear that person testify in your own mind you say could it happen that way? Does it make sense? These are things you you do every day. That's what we ask you to do here. Can you do that any problems with that?

You're going to hear testimony that's

facts which you have to decide. You're going to hear things if you are selected at the end of the case about the law. Can you do that? When I say accept the law there may come a time Miss Brown and Miss Brathwaite and Mr. Candalaria may come a time during the course of this trial that you hear certain facts in the People's case then it will be the defendant's turn. He may not testify or call any witness. You can not hold that against him can you accept that? Anybody have a problem with that? I know people like to hear both sides of the story am I right Miss Glover if you have children you like to hear what both sides have to say? But you may not hear that in this case. Do you have any problem with that; can you do that? This case has a little peculiarity because the defendant was arrested about a year later. You have to take that into consideration. Can you do that? Many times you hear a person's been indicted. You watch television, listen to the news what comes to your mind when you hear that?

PROSPECTIVE JUROR: Depends on the case, lot of things when a person gets indicted

you just thought they chose to indict them sometimes it all depends.

MR. SHEINBERG: Many times you listen to news. You hear a person is indicted comes to your mind they have done something. You wouldn't say to yourself I wonder what they did; is that right?

PROSPECTIVE JUROR: Yes.

MR. SHEINBERG: If you're selected as jurors can you put that out of your mind start this case kind of fresh, the word indictment that's what starts the case going can you accept that?

PROSPECTIVE JUROR: Yes.

MR. SHEINBERG: Any problem with the fact Glenn Cummins may not testify, call any witness do yu have any problem with that?

PROSPECTIVE JUROR: No.

MR. SHEINBERG: Anyone feel this is a murder case, very important case, obviously murder they would expect they would want the defendant to testify or call witnesses; what about you ma'am?

PROSPECTIVE JUROR: Yes.

THE COURT: Judge told you he doesn't

have to. You can't hold that against him. Can you accept that ?

PROSPECTIVE JUROR: Yes.

MR. SHEINBERG: Very important thing when we talk about sizing witnesses up using your every day common sense experience when judge Gerges tells you about the law you have to accept it how about you ma'am any problems with that?

PROSPECTIVE JUROR: No .

MR. SHEINBERG: Anybody have any problem you sir?

PROSPECTIVE JUROR: No.

MR. SHEINBERG: You.

PROSPECTIVE JUROR: No.

MR. SHEINBERG: You have heard statements about the last round last jurors we had. One juror mentioned something about photographs. This is a murder case obviously somebody is dead right? Obviously, there was an autopsy. Medical examiner will testify. You will hear testimony. It's not going to be too gross. It's not going to be gross. I am sure they are not going to have any photographs of the autopsy; things of that nature, going to

VOIRE DIRE

have photographs nothing of that nature. You will hear graphic details how a person died. There will be a medical examiner talking about it in medical terms. Will it affect you in making your determination in this case?

PROSPECTIVE JUROR: No.

MR. SHEINBERG: Anybody, anyone sitting on this prospective panel feels listening to gross testimony or testimony of a medical examiner talking about autopsies is going to affect them to the extent they feel they could not be fair impartial Miss Glover?

PROSPECTIVE JUROR: No.

MR. SHEINBERG: Ma'am.

PROSPECTIVE JUROR: No.

MR. SHEINBERG: Anybody feel that way? If you are selecteded you are going to hear testimony over a period of couple of days ask you to keep open mind, ask you to judge these people just like you judge everybody else. Make your decision on the evidence not on the fact this is a murder case, not on the fact you're going to hear some ugly testimony, not on the fact you will hear one or two witnesses. Can you do that be fair.

VOIRE DIRE

I have nothing further.

THE COURT: Ladies and gentlemen of the jury everybody is going to wait outside be called outside. Do not discuss this case. Do not come to any conclusions. Be back in five minutes. Do not discuss the case.

(jury exiting).

THE COURT: One through six cause.

MS. MILLUS: Number six

MR. SHEINBERG: I consent.

MR. SHEINBERG:

MS. MILLUS: When she was asked about the police work she said her answer was she wasn't satisfied with police work. You said oh You're going to hear from police officers her answer was I guess so.

THE COURT: I grant it. One through six for cause.

MR. SHEINBERG: None.

THE COURT: Peremptory.

MS. MILLUS: Number two, Miss Harris number five William Chalkley ..

THE COURT: Defense.

MS. MILLUS: Number one Brenner that that's it.

VOIRE DIRE

THE COURT: So we have eight.

THE COURT: Seven through ten cause.

MS. MILLUS: None.

MR. SHEINBERG: No.

THE COURT: Peremptory.

MS. MILLUS: Ten .

THE COURT: Defense.

MR. SHEINBERG: Number eight.

THE COURT: We have ten.

THE COURT: 11, 12 cause?

MS. MILLUS: Not for cause.

MR. SHEINBERG: None.

THE COURT: Peremptory.

MS. MILLUS: Eleven and 12.

THE COURT: Thirteen, fourteen cause?

MS. MILLUS: 13.

THE COURT: Wasn't it well you were talking about --

MS. MILLUS: Originally, but no she was the older woman originally you had to change.

COURT OFFICER: Miss Cadet.

THE COURT: What's the basis?

MS. MILLUS: When I was asking her a question maybe she didn't understand I have a

VOIRE DIRE

feeling she had a hard time hearing me?

THE COURT: I will grant it fourteen for cause.

MR. SHEINBERG: No.

THE COURT: Peremptory.

MS. MILLUS: Premise.

THE COURT: Fifteen, sixteen cause.

MS. MILLUS: Number 16 she did not again I don't believe she had grasp of the English language I think we have to bring --

MR. SHEINBERG: I have no objection.

THE COURT: I am denying it.

MS. MILLUS: Judge, can you at least bring her in to make sure she is understanding.

I don't have to bring in somebody after I listen to them. I make my own notes when people are interviewed.

Peremptory People.

MS. MILLUS: Sixteen.

THE COURT: Defense.

MR. SHEINBERG: Fifteen teen.

THE COURT: Seventeen eighteen cause.

MS. MILLUS: No.

THE COURT: Peremptory.

MR. SHEINBERG: No.

VOIRE DIRE

THE COURT: Peremptory.

MS. MILLUS: Number seventeen teen.

MR. SHEINBERG: I don't know.

THE COURT: We have eleven.

MR. SHEINBERG: Maybe we can have a little conversation.

Lawyer-client conversation)

Off the record

THE COURT: Bring these people. hear your name called please remain seated. If not wait on the side.

COURT CLERK: Juror number five Gomez, juror eight, juror nine, Carrasquiello, juror ten, Tasha Brown, juror \ate\eighty, clerk, juror nine, Carrasquiello eleven Frederick Rodriguez.

For the people whose names were called please remain seated, rest of you remain on the side.

(jury poll taken),

THE COURT: Jurors acceptable to People?

MS. MILLUS: Yes.

(SELECTED JURORS SWORN)

THE COURT: Going to be shown a room

now that's where you go, please come in tomorrow 10:45, please be on time, admonition not to discuss the case among yourselves.

You folks go back down to central jury.

Once again if your name is called please take all your belongings, say present or here. Just go into the jury box. We have elevened jurors. We need one more juror and two alternates for your information.

COURT CLERK: One, Hussnain Ajaz, two, Isabel Orivieri, three, Yevgeniy Nofoff, four, Maria Cabochon, five, Henry Torani, six, Olga Mironenko, seven, Trisha Layne, eight, Feydja Laribaux, nine, Zinette Nelson, ten, Chris Primus, eleven, Javier Minaya, twelve, Sister Anne Marchant, thirteen, Maria Williams, fourteen, Jamal Kassab, fifteen, Wadia Moss, sixteen, Keesha Dash, seventeen, Takara Walters, eighteen, Joyce Barnes.

THE COURT: This is the third round much faster. You heard this twice already. You should be able to come up with your answers quickly. Also I want to remind mind you if you want to discuss anything privately feel free to

VOIRE DIRE

come up here.

However, you're sworn to tell the truth. Have you anyone close to you close friends or family been victim of a crime?

PROSPECTIVE JUROR: Uncle was mugged seven years ago.

THE COURT: Was it here in Brooklyn?

PROSPECTIVE JUROR: Yes.

THE COURT: Reported to police?

PROSPECTIVE JUROR: Yes.

THE COURT: Catch anybody?

PROSPECTIVE JUROR: No.

THE COURT: Were you satisfied with police work?

PROSPECTIVE JUROR: I was not aware.

THE COURT: Don't know anything about the case?

PROSPECTIVE JUROR: He did the whole --

THE COURT: Would that interfere with you being fair, impartial juror?

PROSPECTIVE JUROR: No.

THE COURT: Miss Orivieri?.

PROSPECTIVE JUROR: My dad was mugged two years ago.

THE COURT: How long ago?
PROSPECTIVE JUROR: 2 years ago.
THE COURT: Reported to police?
PROSPECTIVE JUROR: Yes.
THE COURT: Here in Brooklyn?
PROSPECTIVE JUROR: Yes it was.
THE COURT: Did they catch anyone?
PROSPECTIVE JUROR: No.
THE COURT: Satisfied with the police work?
PROSPECTIVE JUROR: Yes.
THE COURT: That interfere with you being fair?
PROSPECTIVE JUROR: No.
THE COURT: You can be fair?
PROSPECTIVE JUROR: Yes.
THE COURT: Miss Kassab.
THE COURT: Daughter was jumped by eight girls .
THE COURT: Was it here in Brooklyn?
PROSPECTIVE JUROR: Yes.
THE COURT: How long ago?
PROSPECTIVE JUROR: March.
THE COURT: Reported to police?
PROSPECTIVE JUROR: Yes.

VOIRE DIRE

THE COURT: Did they catch anyone?

PROSPECTIVE JUROR: Yes.

THE COURT: Satisfied with the police work?

PROSPECTIVE JUROR: Yes.

THE COURT: That interfere with you being fair in this case?

PROSPECTIVE JUROR: Won't interfere.

THE COURT: Someone else.

THE COURT: Miss Mironenko anything else?

PROSPECTIVE JUROR: Eight years ago I took a walk in the board walk in Brighton Beach with my friend. Someone jumped and cut our faces.

THE COURT: How long ago?

PROSPECTIVE JUROR: Eight years ago.

THE COURT: Reported to police?

PROSPECTIVE JUROR: Yes, was near to the precinct. They took us to the hospital.

THE COURT: Satisfied with police work?

PROSPECTIVE JUROR: Yes.

THE COURT: Will that interfere with you being fair in this case; can you be fair in

VOIRE DIRE

this case?

PROSPECTIVE JUROR: I assume so.

THE COURT: You say you think so remember the story I told with the plane captain says I think we are going to.

PROSPECTIVE JUROR: Before I know case I can't say something.

THE COURT: You think you can be fair.

PROSPECTIVE JUROR: Yes I can be fair.

THE COURT: You're absolutely correct you don't know anything about the case ,whatever the case is. The question is can you be fair. You answered yes.

THE COURT: Someone in the back had their hand up sister Anne.

PROSPECTIVE JUROR: I was mugged on the street but in a different city.

THE COURT: What city?

PROSPECTIVE JUROR: Philadelphia.

THE COURT: Was it reported to police?

PROSPECTIVE JUROR: No.

THE COURT: Was there a reason you

didn't report?

PROSPECTIVE JUROR: The person who came at me came from behind. I knew once they dropped my purse, left I couldn't identify so I didn't bother.

THE COURT: That interfere with you being fair?

PROSPECTIVE JUROR: No.

THE COURT: Anyone else?

THE COURT: Have you or anyone in family, close friend been convicted , arrested charged with or convicted of crime?

Want to step up here maam?

(Off the record)

THE COURT: Be seated ma'am.

Anybody here have you any member of family, anyone close been member of enforcement Police, Corrections etc. Miss Dash who?

PROSPECTIVE JUROR: Police, me.

THE COURT: Yourself. There will be police testimony, be able to listen be fair both sides.

PROSPECTIVE JUROR: Yes.

THE COURT: Miss Barnes.

PROSPECTIVE JUROR: I work for the

VOIRE DIRE

Police Department. I am only clerical.

THE COURT: There will be police testimony here be able to listen be fair to both sides.

PROSPECTIVE JUROR: Yes.

THE COURT: Anyone here know anybody who works in the prosecutors' office, any attorney who practices primarily criminal federal, defense work starting with you Mr. Ajaz tell us your marital status.

PROSPECTIVE JUROR: Married, taxi driver.

THE COURT: Wife do?

PROSPECTIVE JUROR: She doesn't do nothing. I have two sons.

THE COURT: How old are your two sons?

PROSPECTIVE JUROR: Six and three.

THE COURT: Your education?

PROSPECTIVE JUROR: Here no.

THE COURT: What country do you come from?

PROSPECTIVE JUROR: Pakistan I went to college two years in college.

THE COURT: Your hobbies?

VOIRE DIRE

PROSPECTIVE JUROR: Watching T.V. Sports.

THE COURT: What section do you live?

PROSPECTIVE JUROR: Brooklyn Kensington Church Avenue.

THE COURT: Miss Orivieri marital status?

PROSPECTIVE JUROR: Yes I am married right now unemployed.

THE COURT: What did you do?

PROSPECTIVE JUROR: Work for brokerage house husband, he also works for brokerage house.

THE COURT: Any children?

PROSPECTIVE JUROR: Three.

THE COURT: Boys ,girls, How old?

PROSPECTIVE JUROR: Two boys girl oldest thirty six, 33 year old son, daughter 30.

THE COURT: Education?

PROSPECTIVE JUROR: High school.

THE COURT: Hobbies?

PROSPECTIVE JUROR: I used to bowl but I can't with my Arthritis.

THE COURT: General area you live?

VOIRE DIRE

PROSPECTIVE JUROR: Carroll Gardens.
THE COURT: Mr. Yevgeniy?
PROSPECTIVE JUROR: Married, engineer.
THE COURT: Wife do?
PROSPECTIVE JUROR: She is a clerk in bank.
THE COURT: Any children?
PROSPECTIVE JUROR: Three.
THE COURT: Boys ,girls?.
PROSPECTIVE JUROR: Girl fourteen, son six and a half one and a half son.
THE COURT: Your education?
PROSPECTIVE JUROR: Masters in Industrial Electronics.
THE COURT: Hobbies?
PROSPECTIVE JUROR: Music.
THE COURT: Section --
PROSPECTIVE JUROR: Midwood.
THE COURT: Miss Cabachon.
PROSPECTIVE JUROR: Divorced medical specialist.
THE COURT: Any children?
PROSPECTIVE JUROR: Six.
THE COURT: Youngest, oldest.

PROSPECTIVE JUROR: 28, 19; three boys, three girls., nursing, watching television, shopping.

THE COURT: What kind of programs?

PROSPECTIVE JUROR: Law and Order.

THE COURT: The section you live in?

PROSPECTIVE JUROR: Sunset Park.

THE COURT: Mr. Torani.

PROSPECTIVE JUROR: Married, Program System with people with Alzheimers, house keeper, three, two boys, one girl girl, 23, 29, 19, high school, music, sports.

THE COURT: General area you live?

PROSPECTIVE JUROR: Sheepshead Bay.

THE COURT: Miss Mironenko.

PROSPECTIVE JUROR: Married high school teacher.

PROSPECTIVE JUROR: Doctor, boy and girl adult.

THE COURT: Your education?

PROSPECTIVE JUROR: Masters degree.

THE COURT: Hobby?

PROSPECTIVE JUROR: Museums.

THE COURT: General area you live?.

PROSPECTIVE JUROR: Brighton Beach.

VOIRE DIRE

THE COURT: Mr. Kassab marital --

PROSPECTIVE JUROR: Single full time student,.

THE COURT: Major.

PROSPECTIVE JUROR: Marketing management.

THE COURT: Education?

PROSPECTIVE JUROR: Third year college, music, sports Sheepshead Bay.

THE COURT: Miss Dash.

PROSPECTIVE JUROR: Police officer, no, dispatcher for the Police Department Bachelors, traveling, Midwood.

THE COURT: Miss Barnes.

PROSPECTIVE JUROR: Divorced, clerical associate, two, one son, 26, one daughter 14.

THE COURT: Your education?

PROSPECTIVE JUROR: Undergraduate.

THE COURT: Hobbies?

PROSPECTIVE JUROR: Watching television, traveling mostly crime shows and black expressions .

THE COURT: Area you live?

PROSPECTIVE JUROR: Bed Stuy.

VOIRE DIRE

THE COURT: Miss Layne.

PROSPECTIVE JUROR: Single, paralegal in law firm.

THE COURT: Legal office you work they do criminal work?

PROSPECTIVE JUROR: Civil litigation I have Bachelors, traveling, watching sports, Crown Heights.

THE COURT: Miss Laribaux.

PROSPECTIVE JUROR: Single full time student, Physician Assistant, single reading, horror and black interest,.

THE COURT: General area you live?

PROSPECTIVE JUROR: Flatbush.

THE COURT: Miss Nelson your marital status?

PROSPECTIVE JUROR: Single, key maker, undergraduate, music, sports, Newkirk.

THE COURT: Mr. Primus?

PROSPECTIVE JUROR: Single, full time student, business, basketball.

THE COURT: General area you live?

PROSPECTIVE JUROR: Flatbush.

THE COURT: Mr. Manaya.

PROSPECTIVE JUROR: Single,

unemployed.

THE COURT: What were you doing?

PROSPECTIVE JUROR: I haven't --

THE COURT: Your education?

PROSPECTIVE JUROR: High school.

THE COURT: Hobbies?

PROSPECTIVE JUROR: Sports, Sunset.

THE COURT: Miss Marchant?.

PROSPECTIVE JUROR: Single I am a director of Religious Education .

THE COURT: Your education?

PROSPECTIVE JUROR: BA

THE COURT: General area you live.

PROSPECTIVE JUROR: Bayridge.

THE COURT: Miss Williams.

PROSPECTIVE JUROR: Single, common law HIV Tech Coordinator, three children two boys one girl; eight, fifteen, nineteen.

THE COURT: Your education.

PROSPECTIVE JUROR: 2 years college sports, T.V, reading.

THE COURT: General area you live?

PROSPECTIVE JUROR: East New York.

THE COURT: Miss Moss your marital status?

VOIRE DIRE

PROSPECTIVE JUROR: Single, customer service, graduate, shopping, reading, bowling,.

THE COURT: General area you live.

PROSPECTIVE JUROR: Clinton Hill.

THE COURT: Miss Walters.

PROSPECTIVE JUROR: Single, supervisor department store, full time student, single shopping.

THE COURT: General area you live.

PROSPECTIVE JUROR: East New York.

THE COURT: Anything any of you would like to bring to my attention think might interfere with you being fair, impartial?

MR. MARONE: Thank you, Your Honor. Miss Cabochon you said you like to watch Law and Order; you enjoy that?

PROSPECTIVE JUROR: Yes.

MR. MARONE: Do you realize it's just a T.V. show that the way they may prove a case on T.V. may not be the way we show that case to you, won't hear music or see anybody special coming in. It might be a lot more simplistic than that. I want to bring that to your attention, won't be like CSI or Law OrderSince you have been here two rounds probably very

bored. Ask you first how do you feel, what is your opinion of the people in presenting one, witness to an incident would that be enough for you to find individual guilty?

PROSPECTIVE JUROR: Would be enough if nobody else.

THE COURT: You got to add to that you have to believe the person and the People have to prove their case beyond a reasonable doubt. Just because you have One witness may not be sufficient unless they prove beyond a reasonable doubt that the defendant is guilty plus they prove all the elements of the crime. Will that be sufficient for you if they do that?

PROSPECTIVE JUROR: Yes.

MR. MARONE: Sir if we put One, witness on the witness stand only evidence you heard was testimony which is in fact evidence would that be sufficient?

PROSPECTIVE JUROR: If you got proof too.

MR. MARONE: If you found the witness on the witness stand credible would that be sufficient for you to reach a verdict of guilty

if you found that individuals' testimony credible you think, yes?

PROSPECTIVE JUROR: Yes.

MR. MARONE: Maam would you be able to make a decision beyond a reasonable doubt based on just evidence One, individual's testimony coming from that stand?

PROSPECTIVE JUROR: Depends how he presents himself.

MR. MARONE: As the judge said numerous times will you be willing to listen to that person make a decision based on just one, person's testimony?

PROSPECTIVE JUROR: Yes.

MS. MILLUS: You sir that individual is fifteen, 16 years of age would that affect your viewpoint of that witness?

PROSPECTIVE JUROR: I would look hear what he has to say depending on the facts nothing to do with the fifteen --

MR. MARONE: Maaml how about yourself?

PROSPECTIVE JUROR: Depends how this person presents --

MR. MARONE: Miss Millus and I have

spoken about recognition of individuals their facial features, maybe hidden somewhat. If I held this up sir do you still know it's me?

PROSPECTIVE JUROR: Yes.

MR. MARONE: How long have you seen me for?

PROSPECTIVE JUROR: All day.

MR. MARONE: Ask anybody in the back anybody in the back row have a problem recognizing me?

PROSPECTIVE JUROR: I might.

MR. MARONE: Thank you for your candor.

Going to ask about confidential informants fact that we may use a confidential informant that individual to be up front?

MR. SHEINBERG: I am going to object to confidential informant.

THE COURT: Sustained as to form.

MR. MARONE: We may use an informant an informant may have made some kind of arrangement with our office. Would that affect how you view that individual's given testimony giving evidence here in the witness stand?

PROSPECTIVE JUROR: Repeat the

question.

MR. MARONE: The fact One of our witnesses going to come up here give evidence.

THE COURT: Please continue.

MR. MARONE: Miss Lane give you a different question. Go back to my initial question if the People presente one witness whose testimony you found credible up here on the witness stand would that be enough to find a verdict beyond a reasonable doubt if you believe what this witness said up on the witness stand or need more?

PROSPECTIVE JUROR: Possible I would need more.

MR. MARONE: What would you need?

PROSPECTIVE JUROR: Depends how long ago the case was like when the incident happened because you're saying eye witness if there's one eye witness would I believe that one eye witness? I think I would need to see more evidence.

THE COURT: You know you're being asked these questions in a vacuum. This is not the fact. I want to give you an example supposing it was husband and wife that lived

VOIRE DIRE

together four years you think they'd recognize one another?

PROSPECTIVE JUROR: Yes.

THE COURT: That's one set of facts supposing this happened in the middle of the night, all lights are out, no lights at all and people can't know one another. Think that would be a different set of facts?

PROSPECTIVE JUROR: That's different.

THE COURT: That's the point if there's only one witness but you're convinced beyond a reasonable doubt that the People have proved their case you don't know the answer to this yet. They prove all the elements to the crime, I haven't explained the elements of the crime but supposing you're convinced could you convict the defendant under those circumstances you're convinced.

PROSPECTIVE JUROR: Yes.

THE COURT: Miss Laribaux supposing that one witness is on that witness stand giving evidence at the present time didn't say anything to the police for five, six months would that affect your view point of that witness and their testimony?

VOIRE DIRE

PROSPECTIVE JUROR: May have had reason not wanting to go to the police to report whatever it is. But I will still see if try to figure out whether or not he is credible. If I thought he wasn't would be convinced.

MR. MARONE: Do you understand there could be extenuating circumstances and reasons they might not come forward Miss Nelson?

PROSPECTIVE JUROR: I agree what she said.

MR. MARONE: Mr. Primus one witness be enough for you?

PROSPECTIVE JUROR: Yes.

MR. MARONE: Even if they didn't come forward five or six months?

PROSPECTIVE JUROR: Yes I can still.

THE COURT: Anything else?

MR. MARONE: Just ask this gentleman the same question one witness be enough?

PROSPECTIVE JUROR: Yes.

MR. MARONE: My witness might be somebody you don't like personally. You just don't like him not somebody you want to have a beer with, not somebody you want to go to the

movies with. How would that affect you hearing evidence of that one witness on the witness stand?

THE COURT: Sustained as to form.

MR. MARONE: Would you be willing to listen to that witness give testimony would you be unbias?

PROSPECTIVE JUROR: Yes.

MR. MARONE: Maam, sir, would anyone have a problem with that type of witness? You could all look at that type of witness in an unbias fashion. Thank you ladies and gentlemen of the jury.

THE COURT: Counsel?

MR. SHEINBERG: Folks of course You're going to have to listen to witnesses that's what your job is. If you are selected as jurors you're going to listen to them. You're going to determine whether they are telling the truth or not, very simple. You heard me ask the same question over, over. You heard the judge tell you what credibilityy is. That's your function. There is no magic. You heard me object several times and the judge ruled on it, has nothing to do with you. It's

VOIRE DIRE

a legal thing. Judge rules on it whether I win all my objection or People win has nothing to do with you. It's as a matter of law like when the defendant doesn't testify as a matter of law. Has nothing to do with you. What has to do with you is the witness whether or not you believe them.

People just indicated someone is going to testify who's's working off some kind of deal with Assistant District Attorney. You have to accept it. You have to listen to that witness and you have to determine whether whether his making a deal makes his testimony a little stronger; can you do that?

Is there anybody sitting here doesn't want to be a juror in this case?

PROSPECTIVE JUROR: Me.

MR. SHEINBERG: Anybody else; we only need one juror. Can you all be fair and impartial?

PROSPECTIVE JUROR: Yes.

THE COURT: Wait outside do not discuss the case among yourselves. Be back five to ten minutes. ready number one cause.

(jury exits)

VOIRE DIRE

MR. MARONE: Number one through six.

THE COURT: Number one.

MR. MARONE: No .

THE COURT: Defense cause.

MR. SHEINBERG: No .

THE COURT: People.

MR. MARONE: Number one Ajaz; how many challenges do I have left?

THE COURT: They have 13. two cause People?

MR. MARONE: No.

THE COURT: Cause.

MR. SHEINBERG: No.

THE COURT: Peremptory.

MR. MARONE: No.

THE COURT: Peremptory.

MR. SHEINBERG: Challenge number two Miss Orivieri.

THE COURT: Three.

MR. MARONE: No.

MR. SHEINBERG: No.

THE COURT: People?

MR. MARONE: No.

MR. SHEINBERG: Challenge number three.

VOIRE DIRE

THE COURT: Four, cause.
MR. SHEINBERG: No.
THE COURT: People?
MR. MARONE: Yes.
THE COURT: Five cause?
MR. MARONE: No.
MR. SHEINBERG: No.
THE COURT: Peremptory.
MR. MARONE: No?
MR. SHEINBERG: Yes.
THE COURT: Six cause?
MR. MARONE: No.
MR. SHEINBERG: No.
THE COURT: Peremptory.
MR. MARONE: No.
MR. SHEINBERG: Challenge.
THE COURT: Seven cause?

MR. MARONE: No.
MR. SHEINBERG: No.
THE COURT: People?
MR. MARONE: Yes.
THE COURT: Eight cause People.
MR. MARONE: No.
MR. SHEINBERG: No.

VOIRE DIRE

THE COURT: Peremptory?
MR. MARONE: No.
MR. SHEINBERG: No exception .
THE COURT: Jury.
THE COURT: Alternate number one number nine for cause.
MR. MARONE: No.
MR. SHEINBERG: No.
THE COURT: Peremptory.
MR. MARONE: No.
MR. SHEINBERG: Acceptable.
THE COURT: Alternate number one. For ten cause People.
MR. MARONE: No.
MR. SHEINBERG: No.
THE COURT: Peremptory.
MR. MARONE: Yes.
THE COURT: Eleven cause People.
MR. MARONE: No.
MR. SHEINBERG: No.
THE COURT: Peremptory People.
MR. MARONE: Yes.
THE COURT: Twelve cause.
MR. MARONE: That's the woman didn't want to serve.

VOIRE DIRE

MR. SHEINBERG: That's not the woman.

THE COURT: Yes, 12. Acceptable People that we grant for cause.

MR. SHEINBERG: Yes.

THE COURT: Thirteen.

MR. MARONE: No.

MR. SHEINBERG: No.

THE COURT: Peremptory defense.

MR. MARONE: No.

MR. SHEINBERG: Challenge.

THE COURT: Fourteen cause.

MR. MARONE: No.

MR. SHEINBERG: No .

THE COURT: Peremptory.

MR. SHEINBERG: Okay .

THE COURT: That's alternate number two.

MR. SHEINBERG: We have four alternates and a jury.

THE COURT: Bring in the jury.

(Off the record)

(JURY ENTERING)

THE COURT: Your name is called please remain seated. If your name is not called please wait on the side.

VOIRE DIRE

COURT CLERK: Juror number twelve Yevgeniy Nofoff, alternate number one is Zinette Nelson and alternate number two is Jamal Kassab.

THE COURT: Those three people remain. Everybody else remain on the side.

(jurors exit).

THE COURT: Jurors acceptable to People.

MR. MARONE: Yes.

THE COURT: Defense.

MR. SHEINBERG: Yes.

(jurors sworn)

THE COURT: Be back here tomorrow morning 10:45. You will be shown to a juryroom that's where you go from now on.

Please be here on time. If one of out, is late the whole jury has to wait. For everybody else I think their jury duty is completed.

Sergeant if all of you go outside hand your card to the Court Officer. Go home with the thanks of the Court.

THE COURT: Give him a Court visit?

(whereupon court adjourned for the day)

Certified for Truth & Accuracy