SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF KINGS: CRIMINAL TERM: PART 17

-------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK,

-against-

INDICTMENT NO. 3066-04

GLEN CUMMINS,

MURDER 1
TRIAL

Defendant.

-------------------------------------------X

320 Jay Street
Brooklyn, New York

January 30, 2006

B E F O R E: HONORABLE ABRAHAM GERGES
Justice of the Supreme Court

A P P E A R A N C E S:

OFFICE OF CHARLES HYNES, ESQ.
DISTRICT ATTORNEY - KINGS COUNTY
Attorney for the People
350 Jay Street
Brooklyn, New York 11201
BY: SUSAN MILLUS, ESQ.
Assistant District Attorney
Also:JOHN MARRONE, ESQ.

Assistant District Attorney

GEORGE SHEINBERG, ESQ.
Attorney for the Defendant
50 COURT ST.
Brooklyn, NY

Walter Egielski
Senior Court Reporter

MS. MILLUS: Case on trial indictment 3066-04616 Glen Cummins.

MR. SHEINBERG: George Sheinberg 15 Court Street.

MS. MILLUS: Susan Millus office of the District Attorney.

MR. MARONE: John Marone Assistant District Attorney.

THE COURT: The Court is going to put on the record both sides had opportunity to read complete charge, basic general charge.

Each charge divided into two parts law for the Court; disregard excluded matters rulings by Court. Punishment not to be considered inferences from the evidence, evidence only from witnesses, credibility of the witness, facts for the jury under miscellaneous for the verdict indictment carries no implication of guilt, presumption of innocence, burden of proof, intent witnesses right to call, reasonable doubt, police officers as witnesses, interested witnesses, consciousness of guilt and that would be by defendant except to Brenda Jones.

Stipulations, inconsistent statements, counsel you wanted the fact defendant did not

testify is not a factor, no unfavorable inference can be drawn.

MR. SHEINBERG: That's correct.

THE COURT: Expert witnesses, prior convictions of witnesses motive, the cooperative agreement of Abdul Mohammed, identification of witnesses, specific charges.

Count one on the verdict sheet is murder in the second degree, count two burglary in first degree, count three is tampering with witnesses in the third degree and the verdict sheet.

Is the charge acceptable to People?

MS. MILLUS: The one investigative technique which we requested as well of the police.

THE COURT: Investigative technique in what respect?

MS. MILLUS: It's a a charge they are not to assume the way the police handled the case the fact the the defendant was not arrested for quite some period of time the technique of the police officers I don't know the exact charge.

THE COURT: When was that requested?

MS. MILLUS: We talked about it last week when was that Thursday?

THE COURT: Do you have that charge. I

have never given that charge before?

MR. SHEINBERG: I don't think part of this case there is no special technique used or any special testimony of any witnesses what they did. We have an investigation. Everything is on the report. There is nothing beyond that charge.

THE COURT: I don't know what charge you're talking about. If you show me a charge that gives me the cite on it I will be glad to look at it. I don't know what charge?

MS. MILLUS: I don't have it with me. It is in the CJA.

THE COURT: What is it; give me the number?

MS. MILLUS: Would have to call back to my office.

THE COURT: Well, I am looking at it. I am not saying I am going to give it or not give it anything else?

MS. MILLUS: No.

MR. SHEINBERG: No, Your Honor we have had this charge conference Thursday afternoon.

THE COURT: Both sides had opportunity to read complete charge.

MR. SHEINBERG: That's correct.

THE COURT: Any other requests?

MR. SHEINBERG: I have no further requests.

THE COURT: The verdict sheet has three counts; murder in the second degree, burglary in the first degree, and intimidating a witness in the third degree. That acceptable to People?

MR. SHEINBERG: Yes.

THE COURT: Let's get the jury in please

COURT OFFICER: Jury entering.

THE COURT: Both sides waive reading of the roll call?

MS. MILLUS: So waived.

MR. SHEINBERG: So waived.

(Off the record)

THE COURT: Let me apologize. I know you have been waiting. I told you how important it is to be here on time. But we had other business that we had to take care of which had nothing to do with the jury.

We are ready to proceed. Let me explain to you first of all People have no other witnesses?

MS. MILLUS: No Your Honor the People rest.

THE COURT: Defense?

MR. SHEINBERG: May it please the Court defense rests.

THE COURT: There will be Summations. first person that does the Summation is defense counsel, then District Attorney sums up. Then I give you the law. Then you go into your retiring into your deliberation. It takes a couple of hours so I am going to ask you kind of in between whether You want to break, other wise, we are going straight through until we finish counsel?

MR. SHEINBERG: Good morning Ms. Foreperson, ladies and gentlemen, this is the portion of the trial obviously if you know it's summation, summary of facts. By law I must go first. People then sum up. Then ladies and gentlemen of the jury you're instructed on the law.

You know it's interesting we have been here for possibly a week. During that period of time we have been watching you, how you react to this case. I must say one thing you have listened you really have. Sometimes we see jurors fall asleep. Each, every one of you really listened to this case, listened to the witnesses and evidence. Your function is to determine the facts. This case is about a Homicide, not about gangs not about

anything of that nature. You have got to listen to the facts which you have done. You must listen to the law then make your decision.

During the course of your deliberations I am sure it's going to happen. Some of you may say this witness said this, that. Witness said something else. It's important you have to get the facts as they came from The witness stand. If there is any disagreement among you as to what was said please have it read back by the Sr. Court reporter. He will read word for word. That's what you're going to make your decision on not what you might have guessed what the testimony is, but the actual testimony was.

This case as I told you is not about gangs, not about people. It's about a homicide whether or not the People have established through the testimony of Glen Cummins had anything to do with this. Have they done this?

Let's look at the testimony. You have really one eye witness, one quote supposed eye witness. When you were selected as jurors each every one of you told us the same thing that you you told us you have been around. You have met people and you determined their credibilityy, their

believability, by what they say, do, reacted. That's what you're going to do in this case, sit here and determine the credibility of Brenda Jones that's the witness in this case. Basically it's interesting this case has three separate functions, is three separate parts.

I took the testimony of the three separate parts. you have Brenda Jones and Georgina Jones, sister. That's one part. Then you have the police, the professionals, the people who investigate death for say crime-scene, Det. Platt and other people and medical examiner.

Then you have the third function of this case. They're part of this case; Abdul Mohammed we will talk about in a few moments.

The first part is Brenda Jones. Let's look at Brenda Jones' testimony. You have to say yourselves here is a young woman I think she was 14 at the time October 2nd '03. She lives in an apartment which she told you was raided that morning by swat team. Can you imagine a swat team coming in? There is this young girl traumatized by that; basically living in disfunctional household. Her brothers were arrested maybe moments later maybe hour or two hours later. She tells you

individual came into the apartment with bandana up to here with a hoody. Sometimes she said was black or blue. She wasn't quite certain, saying nothing. You have that in the testimony. Going directly to her room --by the way pointing a gun at her. She backs up. She tells you in her direct testimony was only a few seconds she backs up, hears this individual say what's up things of that nature -- then a shooting that's it. Ladies and gentlemen of the jury you have to concern yourself with time element. You have to concern yourself with lighting. I think I brought out there was a light in the hallway. You have to concern yourself with the condition of Brenda Jones at the time of this incident. That's very important because you have to determine whether or not Ms jones knowing what she, did having this traumatic experience occur to her, whether or not she told the police what happened that night. And folks you heard it when she was interviewed by the detectives on that particular morning April 2nd '033, she told detectives she doesn't know who did it. She told the detectives that the man that came into that apartment was dressed in that mask and hoody. She told the detectives what did he say when he walked

into that room; fired, what's up nigga, completely different than what she testified here. If she never said she told the detectives who did it never said she knew the perp or ever saw the person before what does she tell you? You can consider this very seriously. That same day Glen Cummins was talking to her and he says to her you better not be snitching. You're going to have an instruction by the Court that can be an innocent statement or can be a guilty statement. It's up to you to to determine that, taking all the circumstances and factors together. I suggest to you very seriously that Brenda Jones did not know what person came into that apartment when she spoke to the detectives in July 16. She told Det. Platt about defendant being Cooly, he being the person who did it. Det. Platt I think himself had some concerns because ladies and gentlemen of the jury think about it, Glenn lived in a neighborhood he was in the neighborhood constantly always there. Det. Platt tells you he saw him every time almost on a daily basis. He didn't run away. He wasn't hiding. Yet Det. Platte did not arrest or even call in defendant for questioning. So you can consider that factor. Say to yourself you know if

Det. Platte, the Det. Platt the professional in this case didn't consider Brenda Jones' statement didn't consider it true; possibly didn't consider it, maybe it wasn't what Brenda Jones said. Maybe Brenda is completely wrong. Maybe he discounted Brenda's statement. But folks we have something else. I think we have something more because for a moment now I am going through the second part of this credibility of second part of this particular case; the professionals.

Remember that Detective Forte at the crime scene? What does Forte tell you? He says that he was called down. He came to the scene and he took photographs, did various tings. What else did he tell you? I think it's important he tells you ladies and gentlemen of the jury that while he was there during the course of his investigation he remembered he learned of professionals that were there; that two masked men came into that apartment.

Ladies and gentlemen of the jury these are detectives who are crime scene. These detectives were investigating what happened. What do they learn; what do they find out? He tells you he found out during his preliminary investigation

you have to concern yourself with that, that two masked men walk in, well that could be something that somebody told him, maybe weren't certain about. Judge, may I have the evidence please? Ladies and gentlemen of the jury, during the course of this second portion as I call it of the case you heard testimony from medical examiner. Remember that? You heard testimony from medical examiner who did the autopsy. And in the medical examiner's statement which is in evidence you can take it into the juryroom with you. There is something called a Supplemental Case Information Sheet. It's in evidence. Supplemental Case Information Sheet. That supplemental case information sheet I will read it to you was prepared by Forte and Det. Mahoney. Remember Det. Mahoney Jose case not agent what they call it the detective who's running the show there. He gives a report which says I will read you portion of it. You take the whole thing in read it. At approximately 11 am two men knocked on the apartment door. After being admitted by unknown male youth, walked to the center portion of the apartment where they found the deceased in a bedroom, shot him while standing in the bed room doorway. Witness in the apartment reported hearing

two to three shots. ladies and gentlemen it's in evidence -- it's for your consideration. The Forte did his supplemental information sheet told you he was told or he found out or he investigated what happened and was told two masked men came into that apartment; supplemental report which is in evidence, which is the report, tells you two men came into that apartment. Ladies and gentlemen of the jury you have an absolute right to consider that. Consider this evidence, consider the Forte's statement as to the credibility believabilityy or mistake of Brenda Jones. Folks it's something that you must consider. Because the only witness in this case, the only person who even mentions Glen as being perp of this crime or even Glen is Brenda Jones. Ladies and gentlemen you have to take that concern yourself. Is' her testimony corroborated or is the mistake she made corrobbed by the police testimony?

Folks Brenda Jones told you many things but she also told you she told the police she told you about the perp wearing I think it was blue or black hoody. We know from Det. Platte who saw Glen Cummins walking from, walking with some friend on the street on that particular day he was wearing a

gray hoody. So you have that question to ask yourself? Ladies and gentlemen of the jury it's extremely important. I can't stress it more, that you concern yourself about the type of identification, who made the identification whether or not it's corroborated. That's something for you to determine. That's the facts of the case and the Court's going to give you instruction on whether or not the wrong or right man is on trial. I think he uses the word, wrong man.

Ladies and gentlemen of the jury listen to that instruction. Take the facts in this case put it together with that instruction on the law.

Now we have our third portion most interesting portion of all whether Abdul Mohammed is a witness. That's rather interesting. He tells you ladies and gentlemen of the jury that on July 12, 2003 he was arrested. What's he arrested for? He is arrested for a gun and he is arrested for firing that gun. Even the People agree they didn't shoot that gun in the area he shot it in the vicinity at 30 people. I mean folks; do you consider that an individual who has any kind of credibility but he may have credibility but you saw him. You listened to him. You saw the way he

testified. He tells you, us ladies and gentlemen of the jury in July he was arrested, released on bail, then brought back, put in jail for a period of time.

Now folks, he also tells you us that he communicates with District Attorney's office or they communicate with him. Some time in April April of 2,004 almost a year after this incident. He enters into an cooperation agreement. Cooperation agreement is an agreement where he will testify and the People, District Attorney will give him a break, cut him a deal, give him time or less time or give him no time. We don't know yet. He enters into that agreement and he agrees to testify. Ladies and gentlemen of the jury part of that agreement as you heard was simply I would like to read this portion to you he enters into this agreement sometime in April or May. Part of the agreement is as follows. It is further understood --

MS. MILLUS: Objection.

THE COURT: Sustained.

MR. SHEINBERG: Part of the agreement is very simple, that he agrees to cooperate. He agrees not commit any other crimes or be

rearrested. Remember that. He is going to be an honest guy, not going to commit any crimes. He is going to get a deal for shooting 30 people. But he is going to be honest. He tells us December 3, 2005 he asks the District Attorney to go to Binghamton. D.A. said yes, go ahead, go to Binghamton. What does he do? On December 2nd in Binghamton he is arrested for possession of narcotics, crack-cocaine with intent to sell. And where is he ladies and gentlemen of the jury? He is walking the street. He violates his agreement he shoots up an area where 30 people are. He sells drugs or --

MS. MILLUS: Objection.

MR. SHEINBERG: Possesses drugs.

THE COURT: Overruled.

MR. SHEINBERG: With intent to sell. He is arrested for it. Where is he? Walking streets. is that incentive to lie? Think about it. Think about it. Is that incentive to tell them anything? Remember what he says. He never says that Glen Cummins shot or killed this man, talks about "187" I think you heard a gang expert tell you that he never said that. Again, said I shot this guy, never says. This guy talks about all kind of well

I call it nonsense. Maybe it isn't. I don't know but ladies and gentlemen of the jury you're the only people who determine his credibility. Say to yourself you're over 18. You have been around. Do you trust this guy? This guy told you something. I believe that you would run 50 feet away from him. How can you believe him? How can you believe a man who commits a crime is promised to walk home to walk out?

MS. MILLUS: Objection.

THE COURT: Overruled.

MR. SHEINBERG: Then goes ahead and commits another crime and is walking around the street? Ladies and gentlemen of the jury use your every day common sense, your every day experience. You and I know his credibility is practically zero. You couldn't trust him. You couldn't make your most important decision based upon that.

Folks this case goes on and on. You have testimony from, we have testimony from Brenda Jones the person's eyes. They were special, picture of Glen. Eyes, his eyes are special. Doesn't seem special to me. I think she mentioned, she described them. Take this into the juryroom, marked in evidence close up of Glen when he was he

is arrested, talked about line-up. That's an important factor.

May 14 '04 where Brenda Jones looked at six people, picked out the defendant. Well unfortunately defendant in that picture wasn't wearing that hoody. Remember her testimony masked bandana up to here, hoody covering the face. It wasn't the same thing. Det. Platte told us that they wore a shower cap or surgical cap. You can look at the line-up pictures. They are there in evidence.

Ladies and Gentlemen of the Jury you folks have to concern yourselves as to whether or not the People have established defendant's guilt beyond a reasonable doubt. That's what you have to do whether Glen took the witness stand testified or called any witnesses. You can't hold it against him, can't say anything what he was supposed to say. Look, as you folks say I don't know what you are talking about. Its' obvious he entered a plea of not guilty to the indictment. Now the People have to prove his guilt beyond a reasonable doubt. You say what's reasonable doubt? Person's dead here. Very serious.

I am going to ask you to do one thing all

of you. Ask you to sit here and say to yourselves would I make my most important decision in life, business decision, personal decision, social decision based upon what I heard here? Would I do that or say to myself you know I hesitate. I am concerned. I am concerned about Brenda Jones' testimony. I am concerned about and her inconsistencies. I am concerned about the fact that the People through their detectives have found out that there may have been two other people entered that apartment. There is some severe discrepancies I am concerned about and the fact that Abdul Mohammed is convicted of a crime of shooting at people. In fact I am concerned about the fact that Abdul Mohammed also told Det. Platt when he was interviewed that, if I may, that Abdul saw Freedom (sic) and Coolly together and confronted Abdul regarding the shooting. Everything was squashed. Remember that. Remember that when he was debriefed by detectives when he gave his statement that there was a question as to whether or not Abdul shot Freedom (sic). One of the questions about that remember that. I didn't make it up folks. I don't say things just to say them. You know something; if that was not true, if

what I said was not true there would have been a detective sitting on this stand telling you that it never happened. So folks you can take it that it happened?

MS. MILLUS: Objection.

THE COURT: Overruled.

MR. SHEINBERG: Folks, you can take it that it happened because there would be a detective or D.A. sitting on that witness stand saying Scheinberg you're a liar. It never happened. Folks it happened.

Ladies and gentlemen of the jury you have to consider that. Also, in reasonable doubt you have to consider everything particularly particularly whether or not you would as adults as people who live in Brooklyn as people who have businesses what-have-you make as I said before your most important decision in life based upon what you heard here. I suggest to you very seriously to all of you, you will not make an important decision based on this. Would want more. Would have some doubt. Would have questions in your mind. You know something, court is going to instruct you Court is going to tell you if you have that doubt, if you have that concern, if you are sitting on the

fence, you know maybe, maybe not. That's a reasonable doubt. That doubt belongs to the defendant. Folks a man was killed in this case. It's a very serious crime, Glen charged with the killing, very serious accusation. If the People haven't established or proven his guilt beyond a reasonable doubt you have an obligation. Remember that commitment I asked about? You have an obligation, put aside gangs, put aside everything all of this. Judge this case based on what you hear, based upon the evidence.

Ladies and gentlemen of the jury if you have that reasonable doubt as I said before it belongs to Glen. I am going to ask you after listening to DA's summation listen to Court's charge. I am going to ask you to find Glen not guilty of any of the charges; not guilty of murder in the second degree, not guilty of the burglary in the first degree which the Court will charge you, not guilty of tampering with witnesses. No one made any threats. No one did anything that I know of or heard of. I am going to ask you to find him not guilty of all the charges.

Thank you very much for listening. Thank you for being jurors.

THE COURT: Thank you, Mr. Scheinberg.

MR. MARONE: Thank you, Your Honor.

MR. MARONE: I want to start our conversation off one thing, "oh, shit Cooly just shot Alonso. The first words spoken by a 14 year old girl when she saw someone she knew for years someone she recognized come into her home point a gun at her head and then walk directly to the first bedroom on the left without going any where else and execute Alonso Mack oh, shit shy Coolly just shot Alonso. Brenda Jones knew this on April second of '03 and you ladies and gentlemen of the jury after listening to the evidence appropriated to you from the witnesses up on that witness stand you know it here and you know it today.

I submit to you ladies and gentlemen of the jury this was not some random act of violence. This was not some heat of the moment shooting. This was a lone term thought out calculated murder.

I submit to you ladies and gentlemen of the jury that the it began to take effect effect sometime early in February of the year 2,003 when this defendant announced to Abdul Mohammed I got in fo on Slobs' release. Slob as you learned a derogatory term for Blood made by Crips. And we

know due to the testimony you heard up there that this defendant is a Crip although Mr. Scheinberg, would like you to think that that has absolutely nothing to do with this case. That's Mr. Sheinberg's opinion. Ms. Millus and I have a different opinion. But it's your opinion in that matter that counts.

This defendant didn't want to murder just any Blood. He had a specific Blood in mind and the defendant made his mind known when on February 18 of 2,003 the defendant calls Abdul Mohammed on the telephone and says I got Free. I got him right here. The defendant even goes so far as to put Alonso on the phone with Abdul Mohammed and Abdul Mohammed's shocked. Why is he shocked? Because he knows the relationship between these two parties. He knows one thing, Cooly's a Crip, he knows Alonso. He knows these two individuals are aside from the gang affiliation do not get along. This defendant did not like Alonso Mack. He did not care for Alonso Mack. He wanted nothing to do with him except for his death. About an hour or so later, later after that phone call on February eighteen you heard Abdul Mohammed say he met up with the defendant and with Alonso Mack. And

that's when he learns that this defendant has brought Alonso Mack a pair of black and grey very distinctive pair of boots. I think you remember seeing them. It's number four on the People's evidence. It's the boots that were laying near the lifeless body of Alonso Mack. That confuses Abdul even more. Why is this person now buying Alonso Mack Alonso gifts? Answer, find out, he finds out at a meeting when this defendant tells him I am going to rock him to sleep. You find out later on from Phil O'Kirk (sic) fill what exactly that means. That means I am going to lull a person to sleep, going to catch them off guard, going to make them think we are friends, a trojan horse. If you wanted wanted to analogize the boots to something unfortunate like Alonso Mack, like the trojan horse. He takes the horse in. He like they, trusts this defendant, now thinks this defendant is his friend. The next step obvious this plan comes on April 2nd 2,000 and 3. Apartment 1B at 92 Woodruff here in Kings county. First the police go there. What do the police do there? They have a search warrant. They are executing that search warrant and they are sweeping that house of any guns that maybe there. They are also aside from

taking those functions they are going to take Harvey and Lavar when they leave. Those being the two oldest Jones boys during this transaction. The deceased Alonso Mack comes to apartment 1B. He has no where to sleep. And he wants to go into 1B and he wants to sleep. When he tries to enter he is met by Sergeant Guarino and Sergeant Guarino tells you that he patrols or they search Alonso Mack and he is found not to have any weapon on him. But he tells Alonso Mack you can't go in to apartment 1B until we are done. So what does Alonso Mack do? Walks out of 92 Woodruff stays on the street in plain view. After all what is he worried about? I am friends with Glen. I know Glen is in that area but I am friends with him now. I have nothing to worry about. And he stays out there. In plain view to the whole world to see. After that a warrant is executed. Alonso Mack goes into the apartment. He speaks to the family for a while then goes into that first bedroom on the left. Then goes to sleep. Lower bunk bed, first set of bunk beds bets as you walk into the room ladies and gentlemen of the jury.

I submit to you now is when the defendant ran for Alonso Mack, goes into its final stages.

After Alonso Mack walks in first comes Derrick Hewlitt a known associate of this defendant. What's Derrick there for? He is there for a book bag. So he says he goes into that room for Alonso Mack is sleeping. Then he leaves the apartment but has learned two important things; one thing, he knows where Alonso Mack is now. Two, he knows exactly what Alonso Mack is doing. He is sleeping. The victim has been located and the victim's activities are now known.

Soon after Derrick Hewlitt leaves, confidential informant another associate of the defendant comes in an individual by the name of Lucky enters the apartment. And for the first time in their lives the five Jones children are going to be treated to breakfast by this individual Lucky. Never did it before. Why that particular day? Why does that he pick that day? Is he really that concerned with taking these five little children out to breakfast? Or does he just want to get rid of five possible witnesses, five witnesses who know that defendant. Unfortunately, Lucky doesn't get to leave. They all stay. He even stays. As a matter of fact we will talk about him little later. I submit to you ladies and gentlemen of the jury

possibly the defendant got impatient possibly thought the children were out of the house. I don't know what. I know at approximately 11:15 knock comes upon the door to apartment 1B, a knock that will both end Alonso Mack's life as well as ending Brenda Jones childhood because when Brenda walks to that door and opens it up what is she greeted by? She is greeted by this by this defendant in a black hoody pulled up this defendant with a black bandana up to there. And aside from the hoody a black bandana that this defendant has one other thing he has a gun leveled at 14 year old Brenda Jones. But it's all in vein. It's all a wasted effort by this defendant because Brenda Jones, she knows the defendant. She recognizes the defendant and she watches as the defendant was never in that apartment before, never set foot in there once. Goes directly, directly to that first bedroom on the left, doesn't look anywhere else doesn't go anywhere else, goes right there. Opens the door, points the gun at a sleeping Alonso Mack unarmed Alonso Mack. And he asked him a question. What's up now Harv? He doesn't recognize the person who he bought shoes for. He doesn't recognize the guy he has been hanging out with?

You going to believe he said that because he meant it, because he was looking for somebody else? He knew exactly who was in that room because his boys had gone in there. He knew who was in that room and what that person was doing in that room, make no mistake about it. This was the final fruition of his plan. After asking what's up Harv, he fires at Alonso Mack again and again and again. You have the medical report you have the sketch. You have that all in evidence. He strikes Alonso Mack in the neck. Strikes Alonso Mack in the shoulder. He strikes him in the chest once. He strikes him in the chest again. He strikes him over there. What does Alonso Mack try to do? Some useless attempt to save his life; most likely hold up his arm but flesh and blood and his arm and bones is not going to stop forty caliber bullets. They just rip through Alonso Mack.. It's a point that at that point Brenda Jones makes her announcement to her sister Georgina as she goes flying toward the back of the apartment; Coolly just shot Alonso.

Ladies and gentlemen of the jury Mr. Scheinberg brought it up. I will bring it up too; how do we know what I have just told you is true? You have seen the witnesses. You have heard

the witnesses' testimony while a witness up there testifying and giving evidence do one of three things; a witness lies to you, a witness can be mistaken, or a witness can be telling the truth. It's up to you through your life experience to determine which was being done. Which was being done.

Ladies and gentlemen of the jury you have heard all the evidence, all the evidence in this case. It's up to you to determine whether these witnesses were lying. Up to you to determine whether those witnesses were mistaken.

Ladies and gentlemen of the jury I submit to you that neither of those is correct; that these witnesses were telling a story. They saw the facts. They know the observations they made on April 2nd of 2003. But as Mr. Scheinberg said let's look at that testimony. Let's look at Brenda Jones. Do you recall the first questions I asked Brenda Jones were? Do you want to be here? Are you here voluntarily? Did come? Do you think that little girl wanted to be here? Do you think that little girl wanted to face him in open Court? Say you know what, you're a killer. You murdered Alonso Mack? Do you think that's what she wanted

to come in to do? All that as well and come into all that and lie?

MR. SHEINBERG: Objection to come into all of that.

THE COURT: Sustained.

MR. MARONE: Let's look at Brenda Jones, saw on that day when she recognized this man as the executioner of Alonso Mack. She went to the front door of the apartment. In her apartment was a light. It was well lit. You heard the testimony no one had a problem with light in the apartment. The front door was open. That hallway outside that had a light. There was no testimony that front door was ever closed after it was originally open. So you had the light inside the apartment. You had the light outside the apartment. How far away could the defendant have been from Brenda Jones when that door was open? It's only a hallway. I submit no farther than am from Mr. Tinsley at best, at most. But you have the pictures and you can look. Was there anything in between the defendant and Brenda when this meeting occurred? Nothing except for the gun. But aside from that nothing else blocking her vision. Think about who she is recognizing, who she is identifying. She told you

she knows him. She knows him from the neighborhood. She sees him around. He plays with her little brothers. She knows this defendant. Mr. Scheinberg made light of her mentioning of the eyes. Apparently Mr. Sheinberg believes we all have the same eyes. But we don't. We all have individual characteristics that set us apart. You from you, you from you, so on. And Brenda Jones was able to identify those characteristics because she knows that defendant.

We also talked about this; do you remember voir dire how much does a black bandana really help when you know that person? How much can it hide? I submit on April second 3:30 it did not hide the proof from Brenda. She knew who was in front of her. When Brenda Jones is later brought to the precinct it's very important there is only one factor she did not tell the police. She described this defendant. She talked about the black hoody, Black bandana. She talked about 5'7", 5'8", 232 pounds. She spoke about all of that. Only thing she didn't say is Coolly just shot Alonso. And why? You heard why? Because her father told her not to because he feared for her safety. Because she is a 14 year it girl who has

to go back home to where an execution just took place. Can you understood why she might not have been forthcoming if then after this homicide this execution, this murder, something else happens to Brenda. She is on the street with her sister. Her mother walking on a public sidewalk and who does she see; this defendant. Who's this defendant with, Adonis Hewlitt another known associate. If the name sounds familiar it's because adonis is Derrick Hewlitt who's little brother and this defendant comes over to Brenda and says; don't be snitching, don't be snitching, not in dispute as Mr. Sheinberg just told you. But he wants you to believe. He wants you to think that don't be snitching stated by this defendant to Brenda Jones means something else than what it obviously means. It's your decision ladies and gentlemen of the jury. I am sure you can figure out what was meant by don't be snitching? I submit to you Brenda knew what it meant. It meant her safety.

Also I submit to you that Georgina Jones who was present a moment when that statement was made had a response when questioned by Mr. Sheinberg. She said why would you tell a person you better not be snitching; you must be guilty.

Even a 13 year old child can figure out what was going on there. Unless of course you want to assume that defendant over here was speaking on behalf of some other person who committed crime which is what I believe Mr. Sheinberg wanted you to think, that he was speaking for someone else. Either way still threatening Brenda Jones. But the real reason that statement was made was because Coolly shot Alonso, no black hoody, no black bandana.

Now with the inditia of threats we are going to hide that fact next time Georgina, Brenda meet the defendant is with Abdul Mohammed. Abdul Mohammed corroborates this by telling us he was there. Now the defendant has a new tactic. He tried threats. Let me try something else. Now they tell the girls, I wasn't there. I was in the hospital. I got stabbed. Well, we have a little problem with that. Number one, Brenda Jones knows what she saw and she saw that defendant on April 2nd 2003. Det. Charlie Platt when he was coming to this scene saw that defendant on April 2nd 2003. Abdul Mohammed saw that defendant on April 2nd 2003. Lot of People have seen this defendant when he is supposedly in the hospital due

to a stabbing, why? I ask you now to ask yourselves that question when you go back there. Why tell this story to Brenda and Georgina that?

. Mr. Sheinberg mentioned the line-up. He wondered what took Brenda Jones so long to come forward? What do you think took Brenda so long to come forward? She saw a murder committed in her room, in her home rather. She had been told not to snitch and she had been approached by the defendant. After that the girl was frightend. The girl was scared. She had to live at 92 Woodruff. And she and the family were so desperate to leave there that they actually took residence in a city shelter.

MR. SHEINBERG: Objection.

THE COURT: Overruled.

MR. MARONE: After taking residence in that city shelter and a subsequent residence then that little girl did come forward and completed her description of what happened on April 2nd '03 and she only had to add one point that it was Coolly that shot Alonso Mack.

But Brenda was up on this witness stand and she told you what happened. I submit to you ladies and gentlemen of the jury she told you the

truth. But that's up to you to decide.

It's Abdul Mohammed who tells you why it happens. Abdul Mohammed is the person you may or may not like. You may or may not desire to spend time. That's not the question. The question is this defendant. He liked Abdul Mohammed. He spent time with Abdul. You heard that testimony up here on the witness stand. That evidence was given every day for four to five years. This defendant spent time with Abdul Mohammed. He spent so much time that Abdul Mohammed became a confidant of this defendant.. Mr. Sheinberg mentioned certain things about Abdul, why his testimony is incredible. I didn't pick Abdul Mohammed as a witness ladies and gentlemen, Ms. Millus didn't pick Abdul as a witness. This man sitting over here, the defendant he is the one who chose Abdul Mohammed as a witness. You want to look at his credibility. You want to see if what he telling you is true.

Let's look at Abdul Mohammed's testimony. On April 2nd 2000 three in the morning Abdul Mohammed's coming on to the block of 92 Woodruff. Who does he run into? This defendant. What's this defendant wearing when he runs into him? Black hoody, a black hoody. Again, this defendant tells

him don't go there, this block is hot. That 187 it's done. How does he know this? Ladies and gentlemen of the jury, I submit because he is the one who made the block hot. He is the one who committed the 187. He is the one who killed Alonso Mack. Aside from that black hoody on the defendant at 92 Woodruff or in the vicinity thereof when he is supposed to be in the hospital suffering from a stab wound, what else does Abdul Mohammed see? He sees Lucky. Couldn't get the kids to go out for breakfast. So I guess he is going out with the defendant now. He is a hungry man. If there was any doubt as to who was the victim of that 187 who was the murder victim, who made that block hot defendant clears that right up? Tells Abdul no I just sent Free home and Free bit. Now we know it's Alonso Mack. What corroborates that Alonso Mack is dead? He told you that.

I submit to you ladies and gentlemen of the jury that this defendant not being able to contain himself shows Abdul Mohammed. You heard Abdul say it on this witness stand. 45 caliber handgun. Abdul told you, yes, I am familiar with hand guns. Why is that important? Because Detective Forte did get up here and testify. He

testified that the casings he recovered, that the deformed shells, forty caliber.

Doctor Pershino (sic) also told you the four bullets she dug out of Alonso Mack's corpse, 40 caliber. Retired Detective Frieze gets up here what does he tell you? All those bullets from Alonso Mack's body fired from the same gun. All those casings found near Alonso Mack's body fired from the same gun.

Then Abdul Mohammad tells you something else. He tells you that this defendant goes into 48 St. Paul's goes inside and the next time Abdul Mohammed sees him, no black hoody.

I submit to you ladies and gentlemen of the jury that is the reason, that is why when Det. Platte was coming from Edward R. Murrow High School and he saw this defendant with others at Woodruff and Saint Paul, 200 to 300 feet away from the murder scene. He didn't have the same black hoody on that Brenda had seen and that Abdul had seen. Again, he was still seen in the vicinity that he claims he wasn't in because he was in the hospital, he had been stabbed. And the defendant when he is talking to Abdul he still cannot stop bragging about killing a sleeping unarmed man. He tells

Abdul; I hit him up four times. What do we know? We know through testimony of Dr. Pershino Alonso Mack was struck at the very least by four, 40 caliber rounds at the very least.

Lastly, the defendant told Abdul Mohammed that the defendant had rocked, Abdul had rocked Alonso Mack to sleep which as Detective Forte explained to you ladies and gentlemen of the jury Alonso Mack is dead. But there is something else very funny about Abdul's testimony, something else you have to consider. This all happened in April 2003. Abdul Mohammed doesn't come forward until almost a year later for almost a year keeps this defendant's secret. He doesn't say anything. He is arrested. He is spending time in jail. He doesn't say anything and Mr. Sheinberg will have you believe that an offer from the People assuring him a shorter sentence is going to make Abdul get up there and lie. Heck, he had the opportunity before then. He is sitting in jail. He is not saying anything. He is not saying one word about what this defendant's been doing for the last year. Why does Abdul come forward? He tells you up there. You have the minutes. you can have it all read back to you. He tells you he starts to get

messages in jail. He starts to receive messages. He starts to fear for his safety at that defendant. That is why Abdul comes forward. That is why Abdul comes out of jail. That is why Abdul helps tell you that Coolly, Glen Cummins killed Alonso Mack.

In light of all this evidence you have heard, what is the defense trying to tell you? What is it that was spoken about just previously? He asked you why didn't Brenda Jones come forward? Why didn't she tell the police right away? Well she is 14. She lives where they all live, where this man, lives where his associate lives. She is frightend. She is scared. Her father told her don't come forward. I am sure there is more reasons but --

MR. SHEINBERG: Objection.

THE COURT: Sustained.

MR. MARONE: Four or five reasons why Brenda didn't come forward when she saw the line-up. And you have that line-up in evidence and you can look at it. There is a black bandana on this man's face, not a black hoody but a black shower cap on his head as it is on the head of the other five individuals in that line up who shared similar characteristics with this defendant and yet

Brenda Jones, no problem whatsoever, picked out that defendant.

Now Mr. . Sheinberg talks Charlie Platte, Det. Charles Platte. Detective Platte talks about how Charles Platte used, viewed Brenda's testimony; how much faith he put in it. You don't have to do that. You know why? Because you have Charles Platte's testimony. You can have it read back to you, what Charles Platte said. Every time Mr. Sheinberg asked him he never once doubted the word of Brenda, never once did he not believe that little girl.

MR. SHEINBERG: Objection.

THE COURT: It is your recollection of testimony that will prevail. Whatever attorney says is not evidence in this case.

MR MARONE: Can have it read back to you ladies and gentlemen of the jury, how the police choose to do an investigation. That's up to the police. We can't tell them how to do their work. Each investigation is done neatly and separately. Then we have Detective Forte. And what Detective Forte testified to, what his paper work contained. It contained some reference to two masked men. I can't remember exactly. But I know it dealt with

two masked men.

You can have that testimony read back to you as well. Detective Forte doesn't know where that came from. He said that numerous times up there he had no idea where that came from. But I can tell you where it didn't come from. Never said it came from Brenda Jones, never said it came from anyone who spoke to Brenda Jones. For all we know ladies and gentlemen of the jury maybe Detective Forte got that information from Lucky. He seems to be in a lot of places on that day.

Just bear with me a little longer ladies and gentlemen of the jury. His Honor will soon charge you on this case. I know I will listen as you have especially through out this entire trial as Mr. Sheinberg had pointed out there will be three charges read to you; one intimidating a witness in the third degree. I submit to you ladies and gentlemen of the jury that charge was complete the minute this defendant went up to Brenda Jones and said don't be snitching. Another charge will be burglary in the first degree. Ladies and gentlemen of the jury that crime was committed the minute that door was open to apartment 1B and that defendant over there leveled

that gun at Brenda Jones.

The last charge murder in the second degree. That was completed when this defendant sent Free home. Then this defendant filled Alonso Mack full of four caliber bullets.

Ladies and gentlemen of the jury at the beginning of this trial Ms. Millus did an opening which explained to you what we the People intended to prove to you beyond a reasonable doubt. It's the People's position that we have proved our case beyond a reasonable doubt, that we have shown you through the evidence appropriated, through testimony on that witness stand that this defendant did in fact kill Alonso Mack on April 2nd, 2003:30. But also in that opening Ms. Millus asked you for one thing. She asked you to hold this defendant responsible for his actions. Now at the conclusions of this trial ladies and gentlemen of the jury I ask you for the same thing. I ask you to hold this defendant responsible for his actions because we live in a society with rules and with laws not one of this, not one of this defendant's making. I ask you to hold this defendant responsible for his actions because young girls are supposed to be living, are supposed to walk down

the street without being threatened.

MR. SHEINBERG: Objection.

THE COURT: Sustained.

MR. MARONE: I will ask you to hold this defendant responsible just --

MR. SHEINBERG: Objection.

MS. MILLUS: Ask you to hold him responsible because on April second 2003 in apartment 1B at 92 Woodruff this defendant leveled a gun at Alonso Mack and fired at him again and again until Alonso Mack was dead. For that rage I ask you to hold him responsible. Thank you.

THE COURT: Take a five minute recess, be right back and I will charge you on the law. Takes 45 minutes to an hour then go into your deliberations. You will be able to eat your food which will probably be there. Take a very short break. So everybody can stretch.

(jury exiting).

(after a break was taken the jury entered)

THE COURT: All jurors being present waive?

MS. MILLUS: Yes.

MR. SHEINBERG: So waive by defense.

THE COURT: Members of the Jury, it now becomes my duty to charge you on the law that is applicable to this case. Before doing so I would like to commend each, every one of you for your devotion to your duty as jurors on this case. This trial has been exacting in as far as your attention is concerned because of the nature of the trial. It is now of the utmost importance that the final words be given to you in a calm, quiet atmosphere.

Trial by jury in a criminal case forms the very basis of true administration of justice in our country. It should not be a game of wits or histrionics. Its' intended as a procedure by which we calmly, rationally, objectively try to ascertain the truth in a given situation. You as jurors, I as Court have a great responsibility in seeing that a just result's reached both on law and on the facts.

We have now arrived at that phase of the work where I will be instructing you on the law. Then you will retire to your final deliberations. You will find that this charge is divided into two principal parts; first as a general statement of law which is applicable to jury trials in a criminal case. And second as a statement of law

which is particularly applicable to the crimes charged in the indictment.

On the other hand, with equal emphasis I charge you that you're bound to accept the law of the case as it is given to you by the Court. After you have determined the questions of fact apply the law as charged by the Court and render a verdict based upon the facts as you have decided them and under the law as charged by the Court.

Now during the course of the trial incidents may have occurred which your's instructed to disregard, dismiss from your mind. At times questions were asked and objected to which were sustained. Whether these matters are trivial or inconsequential is of no concern here. You should not be influenced by them nor draw any inference with respect to any of them. Decide the case solely upon the competent evidence before you and determine the issues what you believe to be as credible, believable evidence.

Now during the course of the trial I might have made certain rulings as to objections made by People or defendant. Such rulings have been on matters of law only are not to be taken by you as any indication of my opinion of the guilt or

innocence of the defendant. I have endeavored to preside here impartially without influencing you in any manner, shape or form of your determination of the facts. It is for you to say what the facts of the case are and whether the defendant is to be convicted or acquitted. You should not speculate on my reasons for rulings. They were made pursuant to the rules of evidence as I understand them to be and do not reflect any opinion that I may have about this case. My opinion is immaterial since you're the triers of the facts and are to decide the guilt or the innocence. Now you're to base your verdict on the evidence alone. Do not be affected by sympathy or any other consideration outside of the evidence. Do not be concerned about what the reaction to your verdict maybe, whether It is popular or unpopular, whether It pleases or displeases anyone or what it's effect maybe as far as punishment is concerned.

Punishment is not your function nor a matter for your concern but a function which the law places upon the Court alone. Therefore, you the jury may not in determining the issues of guilt or innocence consider or speculate concerning matters relating to sentence or to punishment.

Now you have it in your power to draw proper, reasonable, and just inferences from the testimony and from the exhibits in evidence after carefully and likewising weighing and considering the testimony of each witness who has testified at this trial and all the exhibits in the case. The defendant is entitled to every inference in his favor which can reasonably be drawn from the evidence or lack of evidence. Where two infrences maybe drawn one consistent with guilt and one consistent with innocence. The defendant is entitled to the inference of innocence.

Now the arguments, remarks and summation of counsel are not evidence. Neither is what I may have said in regard to the evidence or in my rulings. You must take the evidence from the mouth of the witnesses as you heard them and from the exhibits which have been received in evidence.

You're likewise not to draw any inferences from any rulings or instructions of mine as to any of the testimony. You must not infer that I hold any views for or against either the prosecution or the defendant.

I charge you that it is your recollection of the evidence and your determination of the

issues of fact which control. Do not hesitate to ask the Court to have testimony read back if you wish and to have exhibits in evidence brought into you for your examination. Likewise, if there is any portion of my charge to you on the law that you don't understand do not hesitate to ask for me to read it back to you again. However, if you do have a question do not indicate to the Court how deliberations are progressing or how you're voting.

Now performing your function of determining what the facts are and where the truth lies, it is necessary of course for you to evaluate the testimony of all the witnesses in order to determine their credibility and of the weight which you should give to their testimony. In order to reach a solution regarding their credibility, that is, the determination of whether or not a witness tells the truth you should apply all the tests and considerations and use the common sense which you would ordinarily apply in your own affairs and in your every day life. In judgingbe the credibility of statements made to you and judging whether or not the person making them is telling the truth you may for example, consider the apparent interest or lack of interest of any witness in the case. You

may consider the bias and prejudice of any witness in the case, if he or she had any such bias yays or prejudice. You may also consider the age, appearance, testimony, conduct and behavior of the witness as he or she sat on the witness stand and testified. You may further consider the opportunity witness had to observe the facts about which he or she testified. You may consider the probability or improbability of his, her story in view of all the other evidence, facts or circumstances proven at the trial.

Now the fundamental duty of the jury in this case is to determine the facts. You're the fact finding body. The law says you're the exclusive judge of the facts. Now whatever your verdict maybe in this case it must be by a unanimous vote of the jury; in other words all 12 of you must agree. Now if in your deliberations you find that any witness has knowingly and willfully testified falsely as to any material fact, you're at liberty to disregard his or her entire testimony or you may disregard as much of his or her testimony as you believe was untruthful and accept as much of his, her testimony as you find to have been truthfully given.

Now the mere fact that an indictment was returned creates no presumption of the defendant's guilt. The indictment is merely an accusation. The mechanics by which accused is brought to a trial. It is without probative force and carries no implication of guilt whatsoever.

Now in this, every criminal case the accused is presumed to be innocent. That presumption remains with him throughout the trial unless or until guilt is proven beyond a reasonable doubt. That presumption of innocence exists now at this moment and accompanies you to the juryroom. Only if the evidence which you accept and believe convinces you beyond a reasonable doubt that the defendant is guilty is the presumption discarded and a verdict of guilty returned. Only then is the presumption destroyed.

Now in a criminal case the burden of proof to establish the guilt of the defendant beyond a reasonable doubt rests with the prosecution. This burden remains upon the prosecution throughout the trial and never shifts to the defendant.

No defendant is required to prove his innocence. Therefore, before you convict the

defendant you must be convinced of his guilt beyond a reasonable doubt. The rule of law is that the prosecution must prove beyond a reasonable doubt that the defendant's guilty as to each, every element of the crime submitted to you by the Court. If his burden is not fulfilled, you must acquit the defendant. If his burden is fulfilled you must convict the defendant?

What is meant by intent; how may it be determined? A person acts intentionally with respect to a result where a conduct described by statute defining an offense, when his conscious objective is to cause such result or to engage in such conduct. Intent then is an operation of a persons' mind. We are therefore limited to an examination of the external indications of his thinking to determine what he was actually intending at the time of the acts charged. Bear in mind you must determine intent at the time of the commission of the acts charged. But determination what the intent was you may take into consideration all the facts and circumstances surrounding the commission of the crime including what was said and done and the events leading up to during and after the events.

Our law providesed that both the People and the defendant may as a matter of law, call and examine witnesses and each party may cross-examine any witnesses called by any of the parties. There is of course no duty upon the defense to call any witnesses since I have explained to you it is always incumbent upon the People to prove each and every element of the crimes charged beyond a reasonable doubt and this burden never shifts. However it is not the number of witnesses called which is controlling upon your judgment. But it is the quality of the testimony which must prevail.

Now this completes my instructions on the constitutional safeguards of the presumption and the burden of proof. I now discuss with you the constitutional mandate, the standard of proof in all criminal cases that of proof of guilt beyond a reasonable doubt. The standard of proof required by law in every criminal case is proof of guilt beyond a reasonable doubt. That standard however does not require the People to prove the defendant's guilt, beyond all possibility of doubt or beyond a shadow of a doubt. It requires the People to establish the defendant's guilt beyond a reasonable doubt. Our law therefore requires that

before the jury may convict the defendant, each of you must be satisfied that the credible evidence is sufficient to convince you beyond a reasonable doubt that the defendant is in fact guilty. The evidence must satisfy you beyond a reasonable doubt that the defendant is in fact the person who committed the crime charged. The evidence must also establish beyond a reasonable doubt each and every essential element of the crimes charged as I shall later define such elements.

What does the law mean when it requires proof of guilt beyond a reasonable doubt? When is a doubt of guilt a reasonable doubt under our law? A doubt of the defendant's guilt to be a reasonable doubt is one for which a reason can be given. The doubt should be sufficiently clear to you as a juror that you will be capable of giving a reason for your views although you have no obligation to articulate your views. The doubt to be reasonable must therefore arise because of the nature and quality of the evidence in the case or from the lack or insufficiency of the evidence in the case. The doubt to be a reasonable doubt should be one which a reasonable person acting in a matter of this importance would be likely to entertain

because of the evidence or because of the lack or insufficiency of the evidence in the case. A doubt of guilt is not reasonable if instead of being based on the nature and quality of the evidence or insufficiency of the evidence it is based on some guess or whim or speculation unrelated to the evidence in the case. Also a doubt of guilt is not a reasonable doubt if it is based merely on sympathy for defendant or from a mere desire by a juror to avoid a disagreeable duty.

I therefore repeat, a doubt of the defendant's guilt to be a reasonable doubt must arise either from the nature and quality of the evidence in the case or from the lack or insufficiency of the evidence in the case. Therefore, the first duty of each juror is to consider and weigh all the evidence in the case and decide which you believe is credible and worthy of your consideration.

The next duty of each juror is to determine whether the juror has in fact a reasonable doubt of the defendant's guilt as that term is defined in our law. A reasonable doubt our law says is an actual doubt one in your mind after you have considered all the evidence in the case.

If after doing so you then feel uncertain and not fully convinced of the defendant's guilt and you're also satisfied that in entertaining such a doubt you're acting as a reasonable person should act in a matter of this importance than that is a reasonable doubt in which the defendant is entitled to the benefit.

I repeat, it is the duty of each juror to carefully review, weigh and consider all the evidence in the case. If after doing so you find the People have not proven the defendant's guilt beyond a reasonable doubt as I have defined that term to you then you must find the defendant not guilty.

On the other hand, if you are satisfied that People have proven the defendant's guilt beyond a reasonable doubt as I have defined that term to you, you must then find the defendant guilty.

Now, you have heard testimony of various police officers. The fact that a witness is a police officer does not change the other rules by which you're to measure credibility. A police officer's testimony does not deserve to be given more or less weight and credence just because of

the witness's position as a police officer. You must not give such testimony more or less probative value or require more or less cooperation then you would the testimony of any other witnesses. You may not arbitrarily accept or reject the testimony of a police officer. You must weigh the credibility of a police officer witness testimony just as you would weigh the credibility of any other witnesses and testimony.

Now the question of the interest of any witness in the outcome of the case and the effect of such testimony on his, her testimony is one for your determination as jurors, whether any witness is sufficiently involved in the outcome of the case to be considered interested is something for you to decide based on your view of the evidence as well as your observation of the witness's attitude and conduct. The determination of a witness interested does not automatically mean that he, she has not told the truth. You must decide in light of your experience, every day life from the witness' testimony, testimony on the stand whether the witness's interest is likely intentionally or unintentional, to color his, her testimony. You're free to disbelieve the witness' testimony even

though it is not other wise impeached or contradicted. You're not however required to or compelled to disbelieve the testimony of an interested witness. You may accept all of it, some of it or none of it. Your own careful consideration and judgment alone will indicate the weight you give to the testimony of an interested witness.

Now, in this case the People have introduced evidence of certain behavior and conduct by the defendant from which the People contend the jury may draw an inference that such conduct evidence is a consciousness of guilt. The evidence upon which the People rely is as follows: The defendant comment to Brenda Jones whether or not the evidence I have mentioned does in fact evidence a guilty mind on the part of the defendant and IF so, what weight should be given to such evidence is exclusively a jury question. Under some limited circumstances proof of such conduct maybe considered by the jury. I instruct you now under what circumstances you may consider such conduct. Your first duty is to decide whether evidence of defendants' conduct upon which the People rely if believed by you does in fact evidence a

consciousness of guilt on the part of the defendant. You must examine such evidence carefully. Such evidence may have an innocent explanation. If you find such an explanation from the nature of the conduct itself you may disregard such evidence. Totally forget that you heard it. For example, common experience teaches that even an innocent person could find himself placed under suspicion may instinctively or protectively resort to sore conduct which might create the appearance of guilt in order to avoid arrest or criminal prosecution. Thus if an innocent inference maybe drawn from the evidence you must disregard it completely. Only if you find that the conduct of the defendant was solely motivated by the consciousness of guilt may you consider weight in your deliberations. I instruct you that proof of guilt evidencing consciousness of guilt has slight value standing alone. Such evidence may never be made the basis of the finding of guilt. However, the People have introduced other direct and substantial evidence pointing toward the guilt of the defendant that that evidence of the defendant's comment to Brenda maybe considered by you with such other direct and substantial evidence of guilt in

arriving at your verdict.

Now you will recall the attorneys stipulated during the course of the trial. When attorneys stipulate to certain facts that means there is no dispute as to those facts. You may consider the facts stipulated to as evidence in the case. Evaluate those facts as you do other evidence, giving them whatever weight you deem to be appropriate.

Now the defendant alleges that the prosecution witnesses have made prior statements which contradict their testimony at this trial. It is for you the jury to decide whether any witness in fact made such prior statements and whether such statements are inconsistent with the witness' testimony at this trial. Even if you find as a matter of fact, that a witness did make prior statements inconsistent with his, her trial testimony, you may not consider those prior statements as evidence or proof on the issue of the defendant's guilt or non-guilt. You may consider the inconsistent statements for the sole purpose of evaluating the credibility of that witness' testimony at this trial.

In making such evaluation you may give

whatever weight you find appropriate to the witness's explanation of his, her prior inconsistent statement. Now the fact that the defendant did not testify is not a factor from which any inference unfavorable to him maybe drawn.

Now, you will recall the O'Rourke, Doctor Pershino and Mr. Frieze testified about certain scientific matters and gave an opinion on such matters. Ordinarily, a witness is limited to testify about facts and is not permitted to give an opinion. However, where scientific, medical technical or other specialized knowledge will help the jury understand the evidence or to determine a fact in issue, a witness with expertise in a specialized field may render opinions about such matters. You should evaluate the testimony of any such witness just as you would the testimony of any other witness. You may accept or reject such testimony in whole or in part just as you might with respect to the testimony of any other witness. In deciding whether or not to accept such testimony you should consider the following: The qualifications and believabilityy of the witnesses the facts or circumstances upon which the witness's opinion was based. The accuracy or inaccuracy of

of any assumed or hypothetical fact upon which the opinion was based, the reason given for the witness' opinion, whether the witness' opinion is consistent or inconsistent with other evidence in the case.

Now there has also been testimony that witnesses in this case have been convicted of crimes in the past. This evidence of prior criminal conviction has been admitted solely to assist you in determining the credibility or believability of these witnesses and how much weight to give their testimony. You must not consider this evidence for any other purpose or permitted otherwise to influence you with respect to your verdict or determination. The fact that a person has been convicted of a crime does not automatically make that person unworthy of belief. However, you may want to weigh that fact with others in determining the person's credibility. This is for you the jury to dcide whether to believe these witnesses or any witnesses completely partially or not at all. Their prior conviction will not be decisive but are one of the factors you may consider in reaching this decision.

Let me now explain motive, in particular

the difference between motive and intent. Intent means conscious objective or purpose. Thus a person commits a criminal act with intent when that persons' conscious objective or purpose is to engage in the act which the law forbids or to bring about an unlawful result.

Motive on the other hand, is the reason why a person chooses to engage in criminal conduct. If intent is an element of the crime charged that element must be proved by the People beyond a reasonable doubt in this case. Intent is as I explained an element of the crime of murder in the second degree. Motive, however is not an element of the crimes charged. Therefore, the People are not required to prove a motive for the commission of the crimes charged. Nevertheless, evidence of a motive or lack or evidence, of a lack of motive maybe considered by the jury. For example, if you find from the evidence that defendant had a motive to commit the crimes charged that is a circumstance you may wish to consider as tending to support a finding of guilt. On the other hand if proof establishes that the defendant had no motive to commit the crime charged that is a circumstance you may wish to consider as tending to establish that

the defendant is not guilty of the crimes charged.

Now the testimony of witness Abdul Mohammed has been heard by you. The witness testified that he signed a cooperation agreement with prosecutor and he is receiving a reduced sentence. Testimony of this witness is subject to same rules of credibility as any other witness. However, you should in weighing his testimony consider any self serving consideration or motive he may have for giving false testimony and base your decision as to believabilityy such such motives or consideration in mind.

Now as you have become aware during the course of the trial a main issue in this trial is the identification of the defendant as as the person who committed the crimes charged. As I have instructed you before the People have the burden of proving to your satisfaction beyond a reasonable doubt not only all the essential elements of the crime as I have instructed you, but also that the defendant is the person who would committed it. Even if you are convinced beyond a reasonable doubt that a serious crime has been committed this does not end your deliberations. You must also be satisfied beyond a reasonable doubt that the

defendant is the person who committed it. You the jury are the sole judge of the rightness. In deciding the certainty of the identification you must therefore examine with great care all the evidence on the issue of identity as you have been instructed. You must be convinced beyond a reasonable doubt that the defendant is the right man. The man who in fact committed the crime, otherwise you must acquit him. In this case a part of the evidence which was offered to establish that the defendant was the right man, that is the actual perp of the crime was the testimony of Brenda Jones. She testified defendant is the person who committed the crime. In addition to Brenda's Jones testimony the People have offered other evidence which other evidence they contend also serves to establish the defendant as the actual perp. In deciding whether defendant is the right person who in fact committed the crime you must consider all the evidence. You have heard on that issue from whatever source. You must give particular attention and examine with care the testimony of Brenda Jones regarding all the circumstances surrounding the commission of the crime. For example, you must consider the opportunity Brenda

had to observe the perp, the lighting condition, the length of time the witness actually observed the perp, the distance between the witness and the perp and any distinctive features or circumstances or distinctive clothing of the perp.

Equally important, you must consider in making evaluation of the credibility of Brenda as she testified here in Court her general intelligence, her mental capacity and ability for reasoning and memory; particularly, her ability to observe, remember the physical features and other characteristics of the perp from your evaluation of Brenda Jones during the commission of crime to observe the perp and upon your evaluation of Brenda Jones general mental capacity or reasoning and memory. And after giving consideration to all the other evidence from whatever source offered to establish whether the defendant is or is not the perp, you must determine whether such total evidence in the case convinces you beyond a reasonable doubt that this defendant is the right man, the man who committed the crime. You will recall the witness Brenda Jones testified that after the crime she saw and identified the defendant at a line-up by the police. The evidence

is that the crime charged was committed on April 2nd '03. This trial is now being held in January 2,006. It is therefore relevant to establish that shortly after the commission of the crime while the witness' memory was perhaps fresher than at the present time, Brenda Jones picked out and identified the defendant as the perp of the crime at a line-up. Such prior identification of the defendant as the perp maybe considered by you together with all the other relevant evidence from whatever source on identification in the case.

In evaluating the accuracy of the witness's identification here in Court of this defendant as the perp of the crime charged I instruct you that the witness's prior identification of the defendant in a line-up should nevertheless be scrutinized by you with care. The People contend that such evidence tends to establish that the witness in identifying this defendant here in Court as the perp is not relying solely on her possibly stale memory of the perp on the date of the crime. However the defendant contends that the witness Brenda was mistaken when she identified him as the perp at the line-up. That because of such previous mistake she is now

identifying here in Court, not the actual perp but instead the defendant mistakenly identified at the line-up. In other words the defendant contends that the wrong man is now on trial before you in this Court because Brenda Jones made a mistake when she previously identified him as the perp at the line-up.

Therefore, in making your decision that the right man or wrong man has been identified as person that you focus your attention principally on the circumstances surrounding the crime rather than what occurred after the crime as I previously instructed you, you should focus principally on one, the opportunity Brenda had during the crime to observe the physical features and other characteristics of the perp. And two, your appraisal of the mental capacity of Brenda to reason and remember what she observed. And your consideration of all of the other evidence in the case from what ever source bearing on the identification of the defendant as the right man who committed the crime or the wrong man who mistakenly identified.

You will recall that People introduced into evidence for your consideration a description

of the perp that Brenda Jones gave to the police shortly after the commission of the crime. You may not consider such evidence in deciding whether the right man or the wrong man is on trial in this case. The reason is that such a description may match a great many persons as well as possibly matching the defendant and of course the police did do not ordinarily submit to the victim for possible identification as the perp a person who did does not to some extent match such description.

You will also recall however that it is your function to evaluate Brenda Jones' opportunity to observe the physical features and other characteristics of the perp and to evaluate also the mental capacity of Brenda Jones to reason and remember what she did in fact observe of the person's physical features.

In performing both such functions you may consider the description Brenda gave to the police shortly after the commission of the crime. You may consider the details with the, physical details and age given to the police on trial. If the description matches you may consider that Brenda did have opportunity to observe and capacity exam for memory. If the physical description does not

match you may decide that Brenda had neither the opportunity or mental capacity to reason at the time and to remember the physical features and other characteristics of the perp. I instruct the People have the burden to prove to your satisfaction beyond a reasonable doubt not only all the essential elements of the crimes charged but also as I have instructed you that the defendant is the perp, the right man who committed such crime. If after given any bearing on the identification you have a reasonable doubt whether defendant is the person who committed the crime you must find the defendant not guilty.

On the other hand, if on the basis of all such evidence you're satisfied beyond a reasonable doubt that the defendant is the person who committed the crime then you may find the defendant guilty as charged.

Now we come to that part of the case where I will explain to you the legal principles applicable to the crimes charged in the indictment. Following instructions are applicable to count one on the verdict sheet. You will be getting a verdict sheet. There are I believe three counts on the verdict sheet. Please follow those

instructions on the verdict sheet. First count will be murder in the second degree.

Under our law a person is guilty of murder in the second degree when with intent to cause the death of another person he causes the death of such person.

The term intent used in this definition has its own special meaning in our law. I will now give you the meaning of that term. Intent means conscious objective or purpose. Thus a person acts with intent to cause the death of another person when that person's conscious objective is to cause the death of another.

In order for you to find the defendant guilty of this crime the People are required to prove from all the evidence in this case beyond a reasonable doubt both of the following two elements: One on or about April 2nd '03 in the county of Kings the defendant caused the death of Alonso Mack. And two, that the defendant did so with intent to cause the death of Alonso Mack.

Therefore, if you find the People have proven to your satisfaction beyond a reasonable doubt both of those elements you must find the defendant guilty of the crime of murder in the

second degree as charged in this count. On the other hand, if you find the People have not proven beyond a reasonable doubt either one or both elements you must find the defendant not guilty of murder in the second degree as charged in this count.

You then go to count two and the following instructions are applicable to count two on verdict sheet; that's burglary in the first degree. Under our law a person is guilty of burglary in the first degree when that person knowingly enters unlawfully in a dwelling with the intent to commit a crime and when effected entry or while in the dwelling or immediate flight there from; that is a person is armed with a deadly weapon. Some of the terms used in this definition have their own special meaning. I will give you the meanings. A dwelling is a building which is usually occupied by a personal lodging thereof at night. A person knowingly enters unlawfully in a dwelling when that person is aware that he is entering such dwelling without license or privilege to do so. Intent means conscious objective or purpose. Thus a person has intent to commit a crime in a dwelling when that persons' conscious

objective or purpose to to commit a crime in a dwelling.

The crime of burglary is separate and distinct from any crime which a person may commit within the dwelling. The crime of burglary is complete when a person knowingly enters a dwelling unlawfully and does so with intent to commit an illegal crime in a dwelling regardless whether that person ever commit or even attempted to commit any crime in the dwelling.

In order for you to find the defendant guilty of this crime People are required to prove from all the evidence in this case beyond a reasonable doubt each of the following four elements: One on or about April second, '03 in the county of Kings the defendant unlawfully entered in the dwelling located at 92 Woodruff apartment 1B. Two, that the defendant did so knowingly. Three that the defendant did so with intent to commit a crime inside the dwelling and four, that in effecting entry while in the dwelling or immediate flight therefrom the defendant was armed with a deadly weapon.

There if you find the People have proven beyond a reasonable doubt each of those elements

you must find the defendant guilty of the crime of burglary in the first degree as charged in this count.

On the other hand if you find the People have failed to prove, have not proven beyond a reasonable doubt any one, more of those elements you must find the defendant not guilty of crime of burglary in the first degree as charged in this count.

Then you go to count three which is the following instructions are applicable to count three that's the last one on your verdict sheet that's tampering with a witness in the third degree.

Under our law a person is guilty of tampering with a witness in the third degree when knowing that a person is about to be called as witness in a criminal proceeding, he wrongfully gets or attempted to compel such person absent himself, herself from or otherwise to avoid or seek to avoid appearing or testifying at such proceeding by means of instilling in her a fear that the actor will cause physical injury to such person or another person.

Some of the terms used in this definition

have their ration special meaning in our law. I will give you the meaning of the following terms: Criminal proceeding and physical injury. Criminal proceeding means any proceeding which constitutes a part of a criminal action or b )an occurrence in a criminal Court or is related to a respective pending or completed criminal action, either of this state or any other jurisdiction or involves a criminal investigation.

Physical injury means impairment of physical conditions or substantial pain. In order for you to find the defendant guilty of this crime People are required to prove from all the evidence in this case beyond a reasonable doubt each of the following elements: On or about April 2nd, '03 Brenda Jones was about to be called as a witness in a criminal proceeding.

Two, that on that date in the county of Kings the defendant wrongfully compelled or attempted to compel Brenda Jones to absent herself from or otherwise to avoid or seek to avoid appearing or testifying at such proceeding by means of instilling in Brenda Jones a fear that the defendant would cause physical injury to Brenda Jones or another person. Three, that the defendant

did so knowing that Brenda Jones was about to be called as a witness in such proceeding.

Therefore, if you find the People have proven beyond a reasonable doubt each of those elements you must find the defendant guilty of the crime of tampering with a witness in the third degree as charged in this count.

On the other hand, if you find the People have not proven beyond a reasonable doubt any one or more of those elements you must find the defendant not guilty of tampering with a witness in the third degree as charged in this count.

As you begin your deliberation remember that it is your recollection of the testimony you should use. If your recollection differs from the evidentiary reference of the attorneys in their summations or from any reference in this charge disregard what we have said and use your own recollection.

If during your deliberations your recollection any part of the testimony fails or if you disagree among yourselves about what a witness said, you can ask to have that part of the testimony read back to you. You may also ask to inspect any Exhibit in evidence, similarly.

Furthermore, if you have any doubt about my instructions on any point of law, you can ask me to clarify the law further or have that part of my charge, reread.

Your foreperson will submit these requests to me in writing. You will also tally the votes, report your verdict to the Court when you reach a verdict.

Remember that each of you has an equal voice in your deliberation. Now you may find deliberations that you differ amongpmong yourselves. Make every effort to harmonize your views, come to agreement about the facts in this particular case. Don't go into the juryroom with a closed mind so that you refuse to listen to the opinion of other jurors or discuss the evidence with other jurors. You should always be open to reason and willing to listen to the opinion of others. However you have a right if you believe you're right to stick to your arguments and conclusions. Make every effort consistent with your conscience and evidence in the case to harmonize your views with the views of your fellow jurors.

In deciding this case use common sense

and good judgment and be impartial and fair in your judgment. Don't let sympathy or prejudice sway your mind. Decide this case on the evidence according to the law as I have given it to you.

I have prepared a jury verdict sheet which you will use in your deliberations. In your rendering your verdict you will report your decision on each count submitted for your consideration.

Your verdict should be either guilty or not guilty on each count, must be unanimous with respect to each count submitted in order to constitute a verdict.

As I said before you must not infer from the verdict sheet or from anything I have said in this charge that I have any opinion in this case or that the Court wants any particular verdict. You will have done your duty if you give this case your careful and unbias consideration regardless of the verdict. If you have any questions your foreperson will submit them in writing. If you wish to have any part of the charge or testimony reread your foreperson should also make that request in writing specifying the portion you want reread. If you want anything reread I want to explain the

procedure. The Court reporter has to go through the record, pick out throughout the record any requests that you have. Sometimes that takes a little time. I want you to understand that sometimes when you send a note it takes some time before we put together all the answers to your questions.

This completes my fine instructions. at this particular point it is necessary for the Court to briefly consult with the attorneys on matters of law related to the Court's final instructions. We will be right back. You can ask for a specific portion of testimony if you so want. As I indicated the Court reporter will find, look for those portions. He has to do that then we will report back.

(Off the record In camera)

THE COURT: Any exceptions?

MS. MILLUS: When you read the indictment as to the tampering charge I don't have a copy of the indictment, was charged April 2nd.

THE COURT: Yes.

MS. MILLUS: I thought I heard earlier the third, no.

THE COURT: Any exception?

MR. SHEINBERG: No.

THE COURT: Any requests.

MR. SHEINBERG: No requests.

THE COURT: Alternates?.

MR. SHEINBERG: Dismiss them.

THE COURT: If they want any evidence.

MR. SHEINBERG: Have them send it in without reconvening.

(back in open court)

THE COURT: 12 jurors will now go with the Court Officer. You will start your deliberations. Alternates please remain.

(Off the record)

(jurors exiting)

THE COURT: Ladies and gentlemen of the jury, has to be frustrating for you to be sitting through the whole trial not be deliberating. But I think the last trial, all right, I didn't use alternates but it's unusual as you can understand there are 12 jurors, 16 of you. Very often something might very well happen where some jurors not available, can't come, so forth. If we didn't have alternates, means we start the trial all over again. That's why we have alternates. but at this point your services are not needed any longer.

You're going to be dismissed from this case. I know we ordered lunch for you. You can in fact have the lunch taken with you, not take it, don't have the lunch. That's an individual decision each one of you would make.

I want to thank you. You folks have been fabulous. You have been here on time today. There were legal issues that had to be taken care of. That's why it took so long. We were all in here. There were some other technical problems that we had to take care of, wasn't any of the attorneys' fault, was just part of life that sometimes everything just happens the way it does. But you folks were great. I now release you from the promise you made. You can talk to whomever you want. You can talk among yourselves. If any of the attorneys want to talk to you it is perfectly proper. However, you do not have to talk to anybody. The decision whether to talk to anybody is a personal, individual decision that each juror makes. There is one exception, the jury has now started deliberations. I never know how long it takes a jury to come to conclusions. I have jurys out for a week deciding the case. Very often alternates become friends with their fellow jurors.

You cannot call or speak to any of the jurors while deliberating. What I suggest, you can call the courthouse here tomorrow. We will tell you if there is a decision or not. Once the decision has been rendered then you can talk to whomever you want. But during the interim period you're not in the courthouse with any juror who's deliberating on this case. Beside that, you're now free to leave or do whatever you want with the thanks of the Court .

(Alternates exiting).

MR. SHEINBERG: My motion at the end of the People's case move to dismiss on the grounds People failed to establish prima facie case.

THE COURT: That's denied.

MR. SHEINBERG: My motion at the end of the entire case is for a trial order of dismissal as to each count of the indictment.

THE COURT: That's denied as well.

THE COURT: Want to give him a Court visit. We will all go out to lunch .

(whereupon the case on trial adjourned for lunch)

* * * *

WE

A F T E R N O O N S E S S I O N

COURT CLERK: Part 17 back in session.

THE COURT: They want Brenda's testimony of the words spoken by the defendant at the point of entry of the defendant.

THE COURT: Off the record

(Where upon the lawyers sectioned off the requested testimony for readback.)

THE COURT: I received your note which reads as follows: Brenda's testimony, the words spoken to the by the defendant at the point of entry to the apartment on cross-examination.

THE COURT: I am going to send you home until tomorrow morning. Do not discuss this case with anybody until all 12 of you are back in the deliberating room.

You're going to come back nine am tomorrow morning, not going to come into the courtroom. Go right into the deliberating room. When all twelve of you are there. That's when you continue deliberations. You do not deliberate if eleven of you are there or nine, you don't deliberate, has to be all twelve people in the deliberating room at the same time.

So have a good evening. As I say you're

not coming in here. You go right in there, start deliberations. As you can understand at this point you're not going to be coming in here. If any of of you are late that means everybody is waiting. Please make sure you're here 9:00 sharp. You start your deliberations.

(jury exiting).

THE COURT: Goodnight.

(case on trial adjourned for the day)

* * * *

Certified to be a true and accurate transcript of the stenographic minutes taken within.

WALTER EGIELSKI
Senior Court Reporter

not coming in here. You go right in there, start deliberations. As you can understand at this point you're not going to be coming in here. If any of of you are late that means everybody is waiting. Please make sure you're here 9:00 sharp. You start your deliberations.

(jury exiting).

THE COURT: Goodnight.

(case on trial adjourned for the day)

* * * *

Certified to be a true and accurate transcript of the stenographic minutes taken within.

WALTER EGIELSKI
Senior Court Reporter

A F T E R N O O N S E S S I O N

COURT CLERK: Part 17 back in session.

THE COURT: They want Brenda's testimony of the words spoken by the defendant at the point of entry of the defendant.

THE COURT: Off the record

(Where upon the lawyers sectioned off the requested testimony for readback.)

THE COURT: I received your note which reads as follows: Brenda's testimony, the words spoken to the by the defendant at the point of entry to the apartment on cross-examination.

THE COURT: I am going to send you home until tomorrow morning. Do not discuss this case with anybody until all 12 of you are back in the deliberating room.

You're going to come back nine am tomorrow morning, not going to come into the courtroom. Go right into the deliberating room. When all twelve of you are there. That's when you continue deliberations. You do not deliberate if eleven of you are there or nine, you don't deliberate, has to be all twelve people in the deliberating room at the same time.

So have a good evening. As I say you're

not coming in here. You go right in there, start deliberations. As you can understand at this point you're not going to be coming in here. If any of of you are late that means everybody is waiting. Please make sure you're here 9:00 sharp. You start your deliberations.

(jury exiting).

THE COURT: Goodnight.

(case on trial adjourned for the day)

* * * *

Certified to be a true and accurate transcript of the stenographic minutes taken within.

WALTER EGIELSKI
Senior Court Reporter

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS: CRIMINAL TERM: PART 17
-------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,

-against-

INDICTMENT NO. 3066-04
GLEN CUMMINS

GLEN CUMMINS,

Defendant.
-------------------------------------------X

320 Jay Street
Brooklyn, New York

January 30TH, 2006

B E F O R E: HONORABLE ABRAHAM GERGES
Justice of the Supreme Court and a jury of twelve plus alternates.

A P P E A R A N C E S:

(Same as previously noted.)

Walter Egielski
Senior Court Reporter

*************************

(Whereupon, the following takes place on the record in open court in the presence of the Court, the assistant district attorney, defense counsel and GLEN CUMMINS.)

COURT CLERK: Case on trial indictment 066-04, Glen Cummins.

MR. SHEINBERG: George Scheinberg 50 Court Street Brooklyn New York.

MS. MILLUS: Susan Millus office of the

District Attorney.

MR. MARONE: John Marone office of the District Attorney.

THE COURT: Bring the jury in.

COURT OFFICER: Jury entering.

THE COURT: Good morning ladies and gentlemen of the jury, all jurors being present both sides waive?

MS. MILLUS: So waive.

MR. SHEINBERG: Waive.

THE COURT: Court has received the following note from you: Testimony of Brenda Jones, the questions both the defense and prosecution that were asked. The Court reporter will read the testimony to you.

(whereupon the court reporter read the requested testimony after which the following occurred:).

THE COURT: Please continue deliberating.

(jury exits)

THE COURT: Have yourself available. We are going to have lunch between one and two.

(after a pause in proceedings the following occurred:)

COURT CLERK: Case on trial.

THE COURT: Want to call it into the record.

COURT CLERK: Case on trial indictment 3066-04 Glen Cummins.

MR. SHEINBERG: George Sheinberg, 50 Court Street representing Glen Cummins.

MS. MILLUS: Susan Millus Assistant District Attorney.

MR. MARONE: John Marone Assistant District Attorney.

THE COURT: Court has received following note. The decision reached.

I just wanted to indicate to the members of the audience you folks have been terrific throughout this trial. I don't want any kind of response to whatever the verdict might be. None of us know what it is. Everyone remain seated until the jury leaves, until after they have given their decision. Everyone remain seated bring the jury.

(Jury entering.)

THE COURT: You may be seated folks.

THE COURT: Please take the verdict.

(whereupon the court clerk asked the following of the foreperson:)

Q In the matter of the People of State of New

York against Glenn Cummins has the jury agreed upon a unanimous verdict?

A Yes.

Q As to count one; murder in the second degree what is your verdict?

A Guilty.

Q As to count two; burglary in the first degree what is your verdict?

A Guilty.

Q At to count three; intimidating a witness in the third degree what is your verdict.

A Guilty.

COURT CLERK: Members hear your verdict as it stands recorded. You say you find the defendant Glenn Cummins guilty of count one; murder in the second degree, guilty of count two burglary in the first degree, and guilty of count three intimidating a witness in the third degree; that your verdict so say you all?

(all jurors respond in the affirmative).

THE COURT: You wish the jury polled?

MR. SHEINBERG: Yes.

(whereupon the court clerk proceeded to poll the individual jurors:)

Q Please answer the following questions the

verdict announced ed by your foreperson your verdict in all respects; juror one?

A Yes.

Q Two?

A Yes.

Q Three?

A Yes.

Q Four?

A Yes.

Q Five.

A Yes.

Q Six?

A Yes.

Q Seven.

A Yes.

Q Eight.

A Yes.

Q Nine.

A Yes.

Q Ten.

A Yes.

Q Eleven.

A Yes.

Q Twelve.

A Yes.

THE COURT: Ladies and gentlemen of the jury I want to thank you. I think you now understand why they say being a juror is the second most important duty of any citizen next to being in the armed forces during war time.

I now release you from the promise you made me. You can discuss the case with whoever you want at this point. If any attorneys want to talk to you it is perfectly proper. However, you don't have to speak to anybody. The decision is an individual one that each one of you makes. Reason why there was a delay today some people couldn't get here. There was some problems with buses, so forth. People didn't get here until late. We weren't able to give you the information you requested until later on. That was yesterday that happened. Today same thing. We had a problem. That's why you didn't get all the information right away. So I wish to thank you. At this point you're released from jury duty.

(jury exits)

THE COURT: Please remain seated.

THE COURT: Date for sentence.

COURT CLERK: March eight.

MR. SHEINBERG: Reserve motions for that

date.

(case on trial completed)

* * * *

Certified to be a true and accurate transcript of the stenographic minutes taken within.

Walter Egielski

WALTER EGIELSKI
Senior Court Reporter